Argued January 12, affirmed February 8, sustained on rehearing April
18, 1916.

# JOHNSON v. McKENZIE.*

(154 Pac. 885; 156 Pac. 791.)

**Mortgages—Transactions Constituting—Deed.**

1. Where a loan broker who secured a loan to enable plaintiff to
erect a building on a lot took a conveyance of the premises under an
agreement that the building should be completed, sold and the proceeds
divided, and it appeared that the loan broker was not liable for any
sums advanced to plaintiff and that at the time of the conveyance there
was no pre-existing debt due the broker, the transaction, though the
broker deemed it his duty to protect the lender, some of the proceeds of
the loan having been diverted from the agreed purpose, cannot be con-
strued as a mortgage.

**Trusts—Declaration of Trust—Necessity.**

2. Under Section 804, L. O. L., declaring that no interest in real prop-
erty other than a lease for a term not exceeding one year, nor any
trust or power, can be created or declared otherwise than by operation
of law or by a conveyance or other instrument in writing, no trust can
arise in moneys realized from the sale of land held under a parol trust,
where, after the sale, there was no declaration of trust, the parol trust
being invalid.

**Trusts—Oral Trusts—Validity.**

3. Where plaintiff averred that she conveyed realty to defendant
under an agreement that he should sell the property, and reimbursing
himself for advances, pay plaintiff the balance, and defendant gener-
ally denied the averments of the complaint, plaintiff, having the bur-
den of proof cannot recover by showing a parol agreement to pay her
the balance, Sections 804, 808, L. O. L., declaring that no interest in
real estate, nor any trust, can be created or declared save by operation
of law, or by a conveyance or other instrument in writing, and that
every agreement relating to any interest in land shall be void, unless
in writing, or some note thereof be signed by the party sought to be
charged.

    [As to parol trusts in real property, see note in 115 Am. St. Rep.
774.]

From Multnomah: GEORGE N. DAVIS, Judge.

This is a suit by Florence Johnson, formerly
Florence Smith, against J. H. McKenzie for an ac-

---

*On grantee's oral promise to hold in trust as giving rise to construc-
tive trust, see note in 39 L. R. A. (N. S.) 906.

As to parol agreement to take title to real property, sell the same
and account for the proceeds as affected by the statute of frauds, see
note in 20 L. R. A. (N. S.) 298.          REPORTER.

counting.  From a decree in favor of defendant, plaintiff appeals.                                    AFFIRMED.

For appellant there was a brief and an oral argument by *Mr. John C. Shillock.*

For respondent there was a brief over the names of *Mr. Milton Reed Klepper* and *Mr. J. L. Conley,* with an oral argument by *Mr. Klepper.*

Department 1. Opinion by MR. CHIEF JUSTICE MOORE.

This is an appeal by the plaintiff from a decree dismissing her suit for an accounting.  The testimony shows that for some time prior to the fall of 1909, the plaintiff, Florence Johnson, then Mrs. Smith, and her father, H. H. Bean, had been buying lots in Portland, Oregon, putting up buildings thereon with money obtained from the defendant, J. H. McKenzie, a broker, selling the real property thus improved, and, from the proceeds, paying the sums borrowed.  The plaintiff had a contract to purchase lot 8 in block 12 in Merlow, an addition to that city, and applied to the defendant to secure for her a loan of $2,000, with which to erect a two-story house on the premises.  He procured that sum from C. C. Marton, for which service the plaintiff promised to pay 2 per cent for negotiating the loan and one half of 1 per cent for paying out the money for labor employed upon and material used in putting up the dwelling.  From the sum loaned the defendant paid, on December 11, 1909, $595.90, the remainder due to the Portland Trust Company, the owner in fee of the lot, which conveyed it to the plaintiff, who thereupon executed to Marton a mortgage of the premises.  The plaintiff's father, who was superintending the

construction of the building upon the lot, suddenly died February 16, 1910, but prior thereto the defendant advanced to him from the loan, $1,000. Between the time of Mr. Bean's death and April 28, 1910, the defendant gave the plaintiff $85.40, paid for labor and material $240.71, charged as commissions $40 and $10, respectively, for securing the loan and disbursing the money, paid $15 for an abstract of the title to the lot, expended $4 in connection with the making of the mortgage, and $16 for insurance on the building, or $2,007.-01, that sum being $7.01 more than the loan. When the plaintiff's father died the house was unfinished, and on June 9, 1910, for the express consideration of $100, she executed to the defendant a quitclaim deed of the lot, which was not filed for record until September 14, 1910, in consequence of a mistake in the sealed instrument. The defendant, between June 13, 1910, and August 15th thereafter, paid out from his own money $1,061.07 in completing the dwelling. He, on October 5, 1910, agreed in writing to sell and convey to Elizabeth A. Mack the real property described, for which she stipulated to give $3,950, and then paid $100, which latter sum was given a broker for negotiating a sale of the premises. Mrs. Mack assumed the payment of the mortgage, then amounting to $2,052, agreed to pay Norman Bean, the plaintiff's brother, $135 for labor performed upon the dwelling, and executed promissory notes for $1,663, payable in installments to the defendant who, by indorsement, converted them into cash, making a profit of $601.93 on the sale of the lot.

The complaint substantially charges that in March, 1910, the plaintiff and the defendant entered into an agreement whereby he stipulated to furnish money enough to complete the house, and in consideration thereof she engaged to convey to him the lot which he

was to sell and from the proceeds pay the indebtedness
against the property, the expenses incurred in com-
pleting the building, retain a reasonable sum as com-
mission for his services and pay over the remainder to
her; that pursuant to that agreement she executed a
deed of the real property to the defendant, who, com-
plying with the terms of the contract, furnished the
money to complete the building and sold and conveyed
the premises, but upon plaintiff's demand refused to
account to her for any of the profits, and that $50 is a
reasonable sum for his services.   The material allega-
tions of the plaintiff's primary pleading are contro-
verted by the answer which for a separate defense as-
serts that the title to the lot was absolutely conveyed
to the defendant who, by a parol agreement, stipulated
to relieve the plaintiff of all liability to the mortgagee
and on account of outstanding obligations for labor
employed upon the building and material furnished for
its construction, the terms of which agreement he had
fully performed.

No written note or memorandum, signed by the de-
fendant, was offered in evidence to establish a declara-
tion of any beneficial interest in the real property al-
leged to have been held by him in trust for the plaintiff.
Her testimony, which is corroborated by that of her
witnesses, conforms to the allegations of the com-
plaint.   A fair consideration of that testimony tends
to prove an agreement by the parties for a joint ad-
venture, whereby the lot was conveyed to defendant
in order that he might furnish the money necessary to
finish the building, sell the real property, and divide
the proceeds.   After her father's death the plaintiff
paid $10 for paint used on the building, expended $90
which she procured from her mother in paying for
labor employed on the dwelling, and in July, 1911, she

also paid Ward Bros. $146.36 for material that went into the structure. The latter payment was made long after she executed her deed to the defendant. She also exercised a supervision over the finishing of the house and assisted in making a sale of the premises to Mrs. Mack.

A witness testified that the defendant informed him the quitclaim deed was executed by the plaintiff pursuant to an agreement that she was to have six months within which to redeem the property; but not having done so, all her interest in and right to the premises were extinguished.

So far as can be discovered from a careful examination of the testimony, there was no debt due or owing from the plaintiff to the defendant when she executed to him a deed for the lot. The defendant testified that $500 of the money obtained from Mr. Marton and advanced to Mr. Bean was expended by the latter in preparing a basement on another lot, upon which no building was erected by reason of the sudden death of the plaintiff's father. The defendant may have considered a moral obligation rested upon him to see that the sum so diverted was restored to the building for the erection of which the money was borrowed, thereby augmenting the security upon the faith of which the mortgagee evidently relied when he made the loan.

1. The evidence shows the plaintiff paid $150 on the purchase of the lot, and had also discharged a few small installments of the consideration, prior to December 11, 1909, and was then owing $595.90 when the real property was conveyed to her by the Portland Trust Company. It is reasonable to suppose the value of the unimproved lot could not have been regarded as adequate security for a loan of $2,000, either by the defendant or Mr. Marton, but that said sum was to be

expended in erecting a building on the premises.
Whether the defendant believed he should protect the
interests of the mortgagee is only conjectural, but be
that as it may, there was no debt, so far as can be
determined from the testimony, due from the plaintiff
to the defendant by reason of the money, which he as-
serts, but she denies, her father diverted, so that her
conveyance of the lot could be regarded as a mortgage,
though in form a quitclaim deed. Thus no unextin-
guished pre-existing debt remained and no new debt
was intended to be created when the conveyance was
given, and for these reasons the deed was not designed
as security, and cannot be declared in effect a mort-
gage: *Grover* v. *Hawthorne Estate,* 62 Or. 77 (114 Pac.
472, 121 Pac. 808).

2. The complaint does not aver nor does the plain-
tiff's testimony show that after selling the real prop-
erty and obtaining the consideration for it, the defend-
ant, pursuant to the oral agreement, or otherwise, de-
clared a trust as to the money in plaintiff's favor.
There was therefore a failure to establish an express
trust in the real property: Section 804, L. O. L.;
*Cooper* v. *Thomason,* 30 Or. 161 (45 Pac. 296); *Bar-
ger* v. *Barger,* 30 Or. 268 (47 Pac. 702); *Parrish* v.
*Parrish,* 33 Or. 487 (54 Pac. 352); *Richmond* v. *Bloch,*
36 Or. 590 (60 Pac. 385). Though a different rule
may obtain in other jurisdictions, the principle is set-
tled in Oregon that a parol trust in a sum of money,
obtained from the sale of land which was made pur-
suant to an oral agreement to hold the fund for the
beneficiary, can arise only by a specific declaration of
the trustee to that effect and made after the sale:
*Cooper* v. *Thomason,* 30 Or. 161 (45 Pac. 296); *Martin*
v. *Martin,* 43 Or. 119 (72 Pac. 639). In the absence of
an averment of that kind substantiated by adequate

proof, the trial court committed no error in denying the relief sought.

The decree is therefore affirmed.        AFFIRMED.

MR. JUSTICE BURNETT, MR. JUSTICE HARRIS and MR. JUSTICE MCBRIDE concur.

---

Former opinion sustained April 18, 1916.

ON REHEARING.

(156 Pac. 791.)

In Banc.    Statement on rehearing by MR. JUSTICE BURNETT.

Substantially the complaint alleges that the plaintiff was the owner of certain real property subject to a mortgage of $2,000; that in February, 1910, the defendant had in his possession about $300 remaining of the proceedings of the mortgage which he held for the erection of a dwelling-house then under construction on the tract; that during March of that year plaintiff and defendant agreed that the latter should apply the money in his hands and furnish additional funds necessary to finish the building, and that in consideration therefor the plaintiff should make, execute and deliver to the defendant a warranty deed conveying the property to him, and on completion of the house the defendant should sell the property for the best price possible, out of the proceeds of which he should discharge the mortgage, reimburse himself for the money he had advanced, retain a sum sufficient to compensate him for his services, and pay her the balance. She further avers that she executed and delivered the deed to him about September 14, 1910, and that he afterward

sold the property for $4,000, and has failed to account to her for the proceeds which she says on information and belief amounted to about $1,500.

All this complaint is denied by the answer.

*Mr. John C. Shillock,* for the motion.

*Mr. Milton Reed Klepper* and *Mr. J. L. Conley, contra.*

MR. JUSTICE BURNETT delivered the opinion of the court.

3. The general issue tendered requires of the plaintiff that she prove her complaint. There are two sections of the Code conclusive upon this matter:

Section 804 reads thus:

"No estate or interest in real property, other than a lease for a term not exceeding one year, nor any trust or power concerning such property, can be created, transferred, or declared otherwise than by operation of law, or by a conveyance or other instrument in writing, subscribed by the party creating, transferring, or declaring the same, or by his lawful agent, under written authority, and executed with such formalities as are required by law."

Section 808 has this language:

"In the following cases the agreement is void unless the same or some note or memorandum thereof, expressing the consideration, be in writing and subscribed by the party to be charged, or by his lawfully authorized agent; evidence, therefore, of the agreement shall not be received other than the writing, or secondary evidence of its contents, in the cases prescribed by law. * * 6. An agreement for the leasing, for a longer period than one year, or for the sale of real property, or of any interest therein. * * "

According to the statement of the plaintiff's complaint she intrusted this real property to the defendant for the sale thereof. She plainly pleads an agreement for the sale of it. Called upon to prove that allegation as against the traverse, she is met by the requirement of the Code that "evidence, therefore, of the agreement shall not be received other than the writing." It is not by the mark to argue that the trust relates to the money to be derived from the sale of the land, and not to the realty itself, and hence may be proven by parol because it refers to personalty. The controlling principle is that it becomes necessary to prove certain things within the statute of frauds as an essential part of the plaintiff's case. To do this she must present the kind of evidence which the law declares to be indispensable in such cases. Harsh as it may appear, we cannot repeal the statute nor evade it. It is the legislative mandate obligatory upon courts and parties. They are presumed to know the law, and their lack of such knowledge furnishes no basis to relieve them from the situation in which they have placed themselves. No fraud or false representation inducing the plaintiff to make the deed she mentions is pleaded or proven. Hence there are no grounds for establishing a trust by operation of law *ex maleficio*. We adhere to the former opinion.

FORMER OPINION APPROVED.

MR. CHIEF JUSTICE MOORE and MR. JUSTICE EAKIN were absent and did not participate in the rehearing of this cause.