PLEASANT M. MESSICK ET AL. v. RHODA HARDMAN PENNELL ET AL.

[No. 61, October Term, 1943.]

*Decided December 15, 1943.*

The cause was argued before SLOAN, C. J., DELA-PLAINE, COLLINS, MARBURY, GRASON, MELVIN, ADAMS, and BAILEY, JJ.

*Edward J. Ryan* for the appellants.

*William S. Jenkins,* with whom were *Capper & Jenkins* on the brief, for the appellees.

GRASON, J., delivered the opinion of the Court.

On July 14, 1923, George E. Hardman and his wife acquired a farm, containing about eighty-six acres of land, in Allegany County, Maryland. They lived there for the balance of their lives. His wife died in 1937 and Hardman died on October 15, 1941, intestate. Six children survived him—four daughters and two sons. All of the children are living and married and all of their respective husbands and wives survive, with the exception of the husband of Mrs. Messick. After the children grew up and married, they left the farm and residence of their parents and established homes for themselves, with the exception of Mrs. Pennell, who always lived with her parents and was living with her father at the time of his death. Mrs. Messick became a widow many years ago. She had four small children. Upon the death of her husband she and these small children returned to the home of her father. Mrs. Messick worked regularly after the death of her husband and Rhoda (now Mrs. Pennell) looked after the home, her father and these infant children of Mrs. Messick. Rhoda never was employed, but all her life lived at home with her parents, until her mother's death and after her mother's death she continued to live home with her father. She kept the house, looked after these infant children and cared for the comfort and welfare of her parents until they died. Living home at the time of Hardman's death was a granddaughter, apparently a daughter of Mrs. Messick.

Hardman was a hardworking farmer, attended to his affairs; and there is nothing in the evidence to disclose he did not know his own mind, exercised his own will, knew what he wanted to do and did it. There is an entire failure of this evidence to show he was one who

could be easily led, or influenced to do something against his will. In fact, one gathers from reading this record that he was a person of ordinary firmness and determination and with respect to these qualities possessed them as do the ordinary run of mankind. He was not old when he died, as that term is ordinarily understood. He was sixty-six years old. Apparently his health was good for there is no evidence in the record that up until around Christmas, 1940, he was ever sick. He was not a rich man and no doubt had to do a great deal of heavy work on his farm. One would gather from reading the record that up until 1940 Hardman was a vigorous man. Around about Christmas, 1940, his health seemed to have become impaired, and in May, 1941, he went to a hospital in Cumberland and was operated upon. It was then discovered he had cancer. From Christmas of 1940 until May, 1941, when he went to the hospital, he still worked on his place and did what he could. Both during that time and after he returned from the hospital, he drove his automobile. After he returned from the hospital he was not confined to bed but was out and around, doing what he could in his then condition of health. Indeed, for a month before his death he was not continuously in bed but was "up and down."

His daughter Rhoda met Alva Pennell and married him August 5, 1941. He worked in a filling station; stayed at the house for a while, and, as one would naturally do, seeing the conditions at the place, helped Rhoda in the care of the stock and other things around the house and farm. Shortly before Mr. Hardman went to the hospital he gave Pennell his deed to the farm and told him to take it to a Mr. Vance, who lived at Chaneysville, Pennsylvania, and tell Mr. Vance to draw a deed conveying the absolute title to the farm from himself to his daughter Rhoda. This Pennell did and while Mr. Hardman was at the hospital the deed, drawn as instructed, was mailed by Mr. Vance to Mr. Hardman at his home. When he returned to his home he opened this letter and found the deed. He told Pennell to have a

notary public come to see him. Thereafter a notary public came and Hardman executed this deed which Mr. Vance drew conveying his farm to Rhoda in fee simple. Five days after her father's death she had this deed recorded among the Land Records of Allegany County.

On August 5, 1942, a bill was filed in the Circuit Court for Allegany County against Rhoda Hardman Pennell and Alva Pennell, her husband. It was filed by her sisters and their respective husbands. Her two brothers, one of whom, Blair Hardman, is administrator of the estate of the father, are not parties to this bill. This bill alleges the death of the father; names his daughters and their respective husbands; that Hardman died on October 15, 1941, seized and possessed of the farm referred to; that after his death a deed was filed by Rhoda by the terms of which Hardman is purported to have conveyed the property of which he died seized and possessed unto the said Rhoda Belle Pennell (property being the farm referred to). It then alleges that the deed was made by Hardman "in order to avoid the necessity of making a will and was conveyed to the said Rhoda Belle Pennell in order that said property might be sold and the proceeds distributed among his surviving children, but that the said Rhoda Belle Pennell, since the death of the said George E. Hardman, has taken charge of said property and is holding the same as her own personal estate and has ignored the purposes for which the said transfer was made, all to the detriment of your petitioners." It is then prayed: 1. That the said deed "may be declared null and void and of no purpose and effect." 2. "That a trustee may be appointed to make sale of said property and after the payment of taxes, costs and other expenses to divide the proceeds thereof among the parties entitled thereto according to their respective interests." And 3. For general relief. An answer was filed by the defendants, denying the allegations of the bill and alleged that the conveyance of said farm, to Rhoda Belle Hardman (since

intermarried with Alva Pennell), "was made for the purpose of vesting the fee simple title to said farm in your said respondent Rhoda Hardman Pennell for her own use and for no other purpose whatsoever."

At the outset it may be observed that the bill in this case does not allege that the deed was procured by fraud, undue influence, or in any manner that is unlawful. The charge is that it was conveyed to the grantee "in order to avoid the necessity of making a will and in order that the property might be sold and the proceeds distributed among the surviving children." There is no written paper of any kind or description signed by the grantor evidencing such an intention. In this state of the record the case falls directly within the seventh section of the Statute of Frauds, which provides: "all Declarations or Creations of Trusts and Confidence of any Lands, Tenements, or Hereditaments, shall be manifested and proved by some Writing signed by the Party who is by Law enabled to declare such Trust, or by his last Will in Writing, or else they shall be utterly void and of none Effect."

This court, in the recent case of *Jacobs v. Schwartz*, 179 Md. 605, at page 608, 20 A. 2d 489, 491, in an opinion by Judge Sloan, stated: "In our opinion, the evidence here is of an express trust, proved only by oral testimony, not evidenced by writing in accordance with section VII of the Statute of Frauds. 2 *Coe's Alexander's British Statutes*, 690 and 695, and the decree appealed from should be affirmed."

In that case the contention was that while a deed absolute in form, subject to the retention of a life estate, it was really in trust because it was understood and agreed between the grantees and their father, that if and when requested by him they would reconvey the property to him. In this case the contention is that a deed absolute in form was in fact intended to be sold by the grantor and its proceeds divided. As was said in the case cited: "This is neither a resulting trust nor is it a constructive trust, but an express trust supported only

by oral evidence." The testimony, therefore, of verbal declarations after the grant by the grantor in his lifetime, that he intended this property conveyed by deed absolute in form to be sold by the grantee and the proceeds distributed among his children is a verbal declaration of trust and this testimony should not have been received in evidence. It is unnecessary to refer to other authorities as the law is determined in this State that an express trust must be evidenced by writing in accordance with the seventh section of the Statute of Frauds and if this deed is to be stricken down it must be for some other reason.

The objection that the deed is not dated is "more technical than substantial." *Eden Street Building Association v. Lusby*, 116 Md. 173, at page 175, 81 A. 284, at page, 285, and Acts of 1943, Chap. 50, page 40; *Kelly & Martin v. Rosenstock*, 45 Md. 389; Article 21, Section 9, *Flack's Annotated Code of Maryland*, 1939.

Caldara's testimony is cited—that Mr. Hardman at the time he acknowledged this deed said he intended it to be a will, but later in his testimony he said he didn't know what kind of paper it was, "a will or what. I took it for granted it was a will. I come to think of it; I don't know what it was; it could have been a deed; it could have been a will." And when asked: "And do you know what that instrument is?" he answered: "No, I don't, sir. I took it and it has been so long since I was out there; I could be very easily wrong on a matter of a deed or will." This is the only direct testimony in the record that the grantor intended this deed to be a will. It is thoroughly insufficient for the purpose.

It is contended by appellants: 1. That there was "no valid delivery of this deed, sufficient to convey title to Rhoda Hardman." 2. That "a confidential relationship existed between the father, George Hardman, and Rhoda Hardman, sufficient to cast suspicion on the transaction requiring that it be set aside." Turning to the testimony: After Hardman returned home from the hospital and found the deed mailed to him by Mr. Vance, he re-

quested Pennell to have a notary public call at his home so that he could acknowledge the deed. Pennell arranged to have Bert Caldara, a notary, call to see Mr. Hardman for the purpose of taking his acknowledgment to the deed. Rhoda Pennell, the grantee in the deed in question, was called as a witness by the appellants, plaintiffs below. She testified that after her father signed the deed he gave it to her; that it was to be her property; that she did not give the deed back to her father but kept it herself after it was signed; that "after she received the deed from her father she kept it in her personal belongings in a cedar chest"; that "at the time the deed was signed Mr. Pennell was there and a Mr. Caldara, who was a Notary Public." She knew that Pennell took her father's deed to Mr. Vance for the purpose of drawing the deed in question for her father. She further testified she kept the deed in her personal belongings and never gave it back to him and kept it after it was signed.

Alva W. Pennell, called by the appellants, complainants below, testified that he asked Caldara to go to see Mr. Hardman; that after the deed was signed and executed Mr. Hardman gave it to Mrs. Pennell, who was Miss Hardman at that time; that she left the room with the deed in her hand. The only other person present on this occasion was the notary, Caldara. There is nothing in his testimony as to the delivery of the deed by the grantor to the grantee and on this testimony we have no hesitancy in holding that there was a valid delivery of the deed to the grantee by the grantor.

It is stated that this is a case where a confidential relationship existed between the father and the daughter.

"The only distinction between voluntary conveyances from parents to children and from children to parents is that in the former case the existence of a confidential relationship between the parties is a matter of fact to be proved, while in the latter, under certain circumstances, it may be presumed as a matter of law." *Upman v. Thomey*, 145 Md. 347, 360, 125 A. 860, 865.

Whether confidential relationship existed is a question of fact. The evidence and the inferences to be drawn therefrom disclose that Hardman was a farmer; he bought his farm in July, 1923; he conducted the farm and the business pertaining thereto; raised a large family and assisted in raising his grandchildren; he died at the age of sixty-six, having conducted his business until around December, 1940, when his health became impaired; that he tried to hold on after this incurable disease afflicted him, and did what he could around the place. There is nothing whatever to show that he was a man who could have been imposed upon and the law presumes that he was a person of ordinary firmness and capable of exercising a reasonable resistance to the designing. His daughter Rhoda was a country girl without business experience, lived her entire life upon her father's farm. She looked after her father (and her mother who died in 1937) and her sister's children. She was the child who was always there to help her father in the days of health and to comfort him in the days of his illness. There was every reason in the world to incline this father to look after his faithful daughter and now the fact that she was home and did these things for her parents and her sister's children is urged as a reason for this court to say that she dominated her father and that her relations with him are to be received with suspicion. This we decline to do.

Later Rhoda Pennell was called on her own behalf. The following questions were excepted to: 1. "Why didn't you record this deed until after your father's death?" To which she answered: "He didn't want the rest of them to know anything about it and I thought that was the only way to do it." The fair inference from the testimony is that Hardman did not want his children to know of this deed. He was a dying man and wanted peace, and probably thought that some of his children would cause unpleasantness if they knew he had deeded Rhoda his farm. The answer to this question simply stated what the court would have reasonably

inferred and the objection becomes immaterial. 2. "Did he ever make any statement to you that the deed was not to become effective until after his death?" And the answer was: "No, sir." There is nothing in the record to show that Mr. Hardman intended this deed to become effective after his death and as the court would certainly have found this as a fact, the mere fact that the witness said that he did not state that he wanted the deed to take effect after his death, was harmless. 3. The third question, upon objection, was withdrawn. 4. The fourth question was: "And you knew that if your father wanted to sell the property to Mr. DeHaven or anyone else he could have done so?" To which she answered: "I don't know anything about that." Surely this answer was not prejudicial.

On the whole case we are of opinion that there is a failure of that clear, certain and satisfactory testimony to declare a deed solemnly executed in accordance with the law, to be null, void and of no legal effect. For these reasons the decree of the lower court will be affirmed, with costs to the appellees.

*Decree affirmed, with costs to the appellees.*