ANTOINETTE JULIANO ET AL. *v.* JAMES F. JULIANO

[No. 351, September Term, 1976.]

*Decided May 11, 1977.*

The cause was argued before THOMPSON, POWERS and LOWE, JJ.

*John C. Sullivan* and *Earl E. Manges* for appellants.

*Gary G. Leasure* for appellee.

POWERS, J., delivered the opinion of the Court.

This intrafamilial suit was brought in the Circuit Court for Allegany County by three siblings, Antoinette Juliano, Mary T. Juliano, and Lawrence A. Juliano, against their brother, James F. Juliano. The case was instituted by the filing, in equity, of a pleading entitled, "Bill of Complaint Praying Jurisdiction Of Trust And Accounting".

The complaint alleged that the parties were children of Guiseppi Guiliano,[1] who died on 18 June 1970, predeceased by his wife. It alleged that in July 1967, the father established a verbal trust of his property, with James as Trustee, and the five children as beneficiaries. The complaint set out the father's real estate in Cumberland which made up the trust estate: 302 South Cedar Street (title held jointly with Mary); 411-13 South Cedar Street; and a lot on West Third Street, all of which were sold, allegedly by James, as Trustee, in 1967 and 1968, for prices aggregating $20,750. It was alleged also that rental income and social security income were received in the amount of $4,400.

Terms of the verbal trust as alleged in the complaint included the distribution to be made at the father's death. It was alleged that the three daughters were to share equally in the proceeds of sale of the property at 411-13 South Cedar Street; that Mary Juliano was to receive the proceeds of sale of the jointly owned property at 302 South Cedar Street; and the remainder of the corpus was to be divided equally among the five children.

The complaint prayed that the court assume jurisdiction over the stated Trust; order James F. Juliano to make an account of the Trust funds; order James to make distribution to the benficiaries according to the terms of the Trust; and for general relief.

Included in the same bill of complaint was an unrelated cause of action, asserted by two of the plaintiffs, Mary and Lawrence, against James, arising out of their service as employees in a store owned and operated by James. The

---

1. One other child, a daughter, was not a party to the case. All of the children have changed the spelling of the family name.

prayer related to that claim was for a declaratory decree as to the amount due each of them from James.

The two aspects of the case were, of necessity, handled separately by the Chancellor below, and we shall discuss them separately here. When the complaint was dismissed, as to each of its two aspects, the plaintiffs appealed.

## The Trust

James Juliano filed an answer to the complaint, in which he denied that there was a trust, and that he was a trustee. He denied also that the net proceeds of the sales of real estate were in the amounts alleged, and said that he stood ready to prove the disposition of the proceeds. He admitted that his father had, in 1967, executed a power of attorney to him, but denied that the properties were sold by him under a power of attorney.[2]

The answer also asserted that the alleged trusts were oral, and involved real property or the proceeds of sale of real property, with no writing or memorandum manifesting the same, and are unenforceable under the Statute of Frauds. In addition, the answer stated that if there was a trust to be distributed at the death of the father, the plaintiffs were guilty of laches because their bill of complaint was filed well over three years later.

Thereafter James Juliano filed a motion, under Maryland Rule 502, for a separate trial of issues of law raised by the defenses of the Statute of Frauds, and laches. The court signed an order directing a separate trial on those issues, and postponing the remaining issues to a later date to be fixed by the court.

The separate trial was held on 30 June 1975, before Judge Stuart F. Hamill, sitting as the Circuit Court for Allegany County. The trial consisted almost entirely of statements or explanations by counsel of their respective contentions, and references to the law. No evidence was offered. The basic

---

**2.** There is no showing in the case of any instance in which James exercised his authority as attorney-in-fact.

facts appear to have been accepted to be as alleged, for the purpose of the issues then before the court.

Appellants' counsel requested and was granted two weeks in which to prepare and file a memorandum.

Judge Hamill filed a written Opinion on 22 July 1975, and an Order dismissing the bill of complaint. Obviously realizing that he had overlooked the other aspect of the case, the Chancellor, exercising his revisory power under Maryland Rule 625, filed a Revised Opinion on 11 August 1975, accompanied by an Order in which he dismissed the claims based on the alleged oral trust set forth in the bill of complaint. He further ordered that the case be set for trial on the issues based upon the alleged employment contracts.

Briefly summarized, the lower court held that the alleged express oral trust, being a trust respecting land, was void under Code, Real Prop. Art., § 5-105, which says:

> "Except as provided in § 5-107, every declaration of trust, or amendment to it, respecting land shall be manifested and proved by a writing signed by the party who by law is enabled to declare the trust, or by his last will in writing, or else it is void."

The court also stated it as the law that the inhibitions of the statute apply with equal force to alleged trusts involving the proceeds from the sale of real property.

No doubt because of the exception referred to in § 5-105, the court aptly explained in the Revised Opinion:

> "It should be noted that by the terms of Code, Real Property, Section 5-107, implied trusts, namely resulting and constructive trusts, are removed from the operation of the Statute of Frauds. However, the Bill of Complaint does not assert that the alleged transaction by and between Guiseppi Guiliano and the respondent constituted either a resulting or constructive trust, nor does their Bill of Complaint assert a basis for the imposition of either form of implied trust."

The Chancellor said that if there was an express trust, it terminated upon the death of the father, which was on 18 June 1970. The bill of complaint was filed on 3 January 1974, more than three and one half years later. Applying the statute of limitations of three years applicable at law, the Chancellor held that the plaintiffs were barred by the equitable doctrine of laches from asserting the trust claim. The court noted that laches would also bar a claim for a constructive or resulting trust.

## The Statute of Frauds

The most important, as well as most difficult, question we must decide is whether the alleged express oral trust is void, under Real Prop. Art., § 5-105. Generally, the law of trusts in Maryland is that the Statute of Frauds does not require a writing except where the subject matter of the trust is an interest in land. *Dove v. White*, 211 Md. 228, 126 A. 2d 835 (1956); *Grimes v. Grimes*, 184 Md. 59, 40 A. 2d 58 (1945); *O'Connor v. Estevez*, 182 Md. 541, 35 A. 2d 148 (1943); *Mushaw v. Mushaw*, 183 Md. 511, 39 A. 2d 465 (1944). Yet, where the subject matter of the trust is both land and the proceeds from the sale of the land, the question of whether the Statute of Frauds applies to the proceeds is not as clear. The answer hinges on whether the proceeds of the sale of the land are considered personalty or whether the money is deemed to be an extension of the land itself making the entire oral trust unenforceable. G. Bogert, *Trusts and Trustees*, § 66, at 441 (2d ed. 1965); I A. Scott, *Law of Trusts*, § 52.1, at 379-81 (3d ed. & Supp. 1977).

It is clear that where the parties allege that the oral trust covered only the realty and did not mention the possibility of a sale of the land, "no contention [may be made] that the trust can be enforced against the holder of the proceeds of a sale of the land." G. Bogert, *supra*, § 66, at 441. The holder's situation is tantamount to his still possessing the land since there is no assertion that a separate trust was intended to cover the proceeds. The trust is unenforceable because the requirements of the Statute of Frauds for a trust involving

land "extend to all substitutes for the original res, either real or personalty." *Id.* at 441-42.

However, in the cases where the oral trust articulated both a present trust in the land and a future trust in the proceeds from the sale of the land, and in fact a sale occurred resulting in the trustee holding the proceeds, the courts and authorities are split as to whether an enforceable trust exists with respect to the proceeds.

Most of the states which have ruled on the question consider the two trusts severable [3] and, therefore, their enforceability must be viewed separately. As long as the trust concerns the actual land, it is unenforceable unless the trust is established in writing. I A. Scott, *supra*, at 379. Once the land is sold then the trust involves personalty and no longer must meet the requirements of the Statute of Frauds. The trustee is deemed "to have 'abandoned the shelter' of the Statute by selling the land." G. Bogert, *supra*, § 66, at 442-44.

The rationale for this view is that the oral trust is not enforceable as long as the res of the trust is land, since the law, as manifested by the Statute of Frauds, is drafted to prevent the enforceability of oral trusts involving only land. Once the land is converted into personalty it would be an injustice to expand the protection of the statute since the trust no longer involves land but rather the res is personalty. *Id.* at 444.[4]

---

3. *Alabama:* Finch v. York, 294 Ala. 382, 318 So. 2d 249 (1975); Westcott v. Sharp, 256 Ala. 418, 54 So. 2d 758 (1951); Willard v. Sturkie, 213 Ala. 609, 105 So. 800 (1925). *Illinois:* Ramsay v. Ramsay, 10 Ill. App. 2d 459, 135 N.E.2d 172 (1956). *Kansas:* Grantham v. Conner, 97 Kan. 150, 154 P. 246 (1916). *Michigan:* Glieberman v. Fine, 248 Mich. 8, 226 N. W. 669 (1929). *Minnesota:* Wolford v. Farnham, 44 Minn. 159, 46 N. W. 295 (1890). *Nebraska:* Marvel v. Marvel, 70 Neb. 498, 97 N. W. 640 (1903). *New Mexico:* Vehn v. Bergman, 57 N. M. 351, 258 P. 2d 734 (1953). *Oregon:* Johnson v. McKenzie, 80 Ore. 160, 154 P. 885 (1916); Johnson v. McKenzie, 80 Ore. 160, 156 P. 791 (1916). *Rhode Island:* Lawrence v. Andrews, 84 R. I. 133, 122 A. 2d 132 (1956). *Washington:* Dowgialla v. Knevage, 48 Wash. 2d 326, 294 P. 2d 393 (1956).

4. A contract theory has also been advanced to support the enforceability of an oral trust involving the proceeds of the sale of land. Where "the agreement to hold the personalty in trust was made upon consideration, equity ought to treat the holder of the personalty as a trustee of it from the moment of its acquisition by him. If the promise to hold the personalty in trust in the future was voluntary, then equity ought to refuse to compel

Advocating this position, Professor Bogert states:

"On principle it would seem that the oral agreement in the case assumed had two parts — a present trust of land and a promise to hold in trust personal property if and when acquired. The enforcement of the real property trust is not in question because no land is now held. The personal property which it was promised would be held in trust has now been acquired by the promisor." *Id.* at 445.

Moreover, in his treatise, *Law of Trusts*, Professor Scott writes:

"By the weight of authority it is held that in this situation the undertaking of the trustee is severable; that insofar as his undertaking relates to the land itself it is unenforceable because of the failure to comply with the Statute of Frauds; but that insofar as his undertaking relates to the proceeds it is not within the Statute of Frauds and is enforceable." I A. Scott, *supra,* at 379-80.

If what the text writers appear to consider the weight of authority were the law in Maryland, the alleged oral trust in the proceeds of sale of real estate would, if proved, be enforceable. The appellants alleged an oral agreement in which the appellee agreed to hold in trust their father's land, convert the land into cash, and, at Mr. Guiliano's death, distribute the corpus to the beneficiaries. In essence, the appellants in their bill of complaint raised two separate trusts — the real property trust and the trust involving the proceeds of the sale of the land. The oral trust for the land,

---

the promisor to perform, and the mere acquisition of the personalty by the promisor should not be important." G. Bogert, *supra,* § 66, at 445.

Moreover, the Restatement of Trusts states that where a land owner transfers land on an oral trust to pay the proceeds of its sale to another person, once the land is sold, "there is a valid contract to hold the proceeds in trust." The transfer of land is consideration for the promise to hold the proceeds in trust and the contract is not required by the Statute of Frauds to be in writing since the proceeds of the sale of the land is merely personalty. Restatement (Second) of Trusts, § 52, Comment g (1959).

of course, is void. However, once the appellee sold the land, he would become liable on his promise to hold in trust the proceeds of the sale — the second trust. That is, when the trust no longer involved land, the Statute of Frauds would not apply.

However, these views have not been expressed or accepted as the law in Maryland. As stated earlier, the courts are divided on the enforceability of trusts involving proceeds from the sale of land. While some courts [5] have enforced the trust of the proceeds, others [6] have not, construing the Statute of Frauds "to mean that the original character of the trust res determines whether the trust is within the statute, and that an express promise to hold all substitutes for the original in trust is of no effect." G. Bogert, *supra*, § 66, at 445. The law implies a duty to hold the successor property in trust, and whether the trust in the substitute property is enforceable or unenforceable turns on whether the trust in the original property was binding or voidable. *Id.* This appears to be the view of the law adopted by the Court of Appeals of Maryland.

*Messick v. Pennell*, 182 Md. 531, 35 A. 2d 143 (1943), involved a situation quite similar in one aspect to the present case. In that case, George E. Hardman, a few months before he died in 1941, deeded his 86 acre farm to his daughter, Rhoda, who later became Mrs. Pennell. Rhoda had remained on the farm with her parents, while the other children, three sisters and two brothers, left home and sought their own careers. After their father died the other children became aware of the transfer of the farm to Rhoda. The three sisters brought suit against Mrs. Pennell and her husband. They alleged the land was conveyed to Mrs.

5. Note 3, *supra.*
6. *Indiana:* Mills v. Thomas, 194 Ind. 648, 144 N. E. 412 (1924); Thomas v. Merry, 113 Ind. 83, 15 N. E. 244 (1888). *Massachusetts:* Simpson v. Henry N. Clark Co., 316 Mass. 118, 55 N.E.2d 10 (1944); Chace v. Gardner, 228 Mass. 533, 117 N. E. 841 (1917); Morris v. Morris, Mass. App. Ct., 327 N.E.2d 917 (1975). *New York:* Foreman v. Foreman, 251 N. Y. 237, 167 N. E. 428 (1929); Bork v. Martin, 132 N. Y. 280, 30 N. E. 584 (1892). *North Carolina:* Hodges v. Hodges, 256 N. C. 536, 124 S.E.2d 524 (1962), citing Restatement (Second) of Trusts, § 52, Comment g (1959); Schmidt v. Bryant, 251 N. C. 838, 112 S.E.2d 262 (1960).

Pennell by their father in order to avoid the necessity of making a will and in order that the property might be sold and the proceeds distributed among the surviving children. In essence, the complainants contended that the deed in reality created Mrs. Pennell a trustee for the land and the proceeds from its sale.

The Court of Appeals in *Messick* affirmed the decree below, rejecting the contention that a trust was created, and said, at 536:

> "At the outset it may be observed that the bill in this case does not allege that the deed was procured by fraud, undue influence, or in any manner that is unlawful. The charge is that it was conveyed to the grantee 'in order to avoid the necessity of making a will and in order that the property might be sold and the proceeds distributed among the surviving children.' There is no written paper of any kind or description signed by the grantor evidencing such an intention. In this state of the record the case falls directly within the seventh section of the Statute of Frauds, which provides: 'all Declarations or Creations of Trusts and Confidence of any Lands, Tenements, or Hereditaments, shall be manifested and proved by some Writing signed by the Party who is by Law enabled to declare such Trust, or by his last Will in Writing, or else they shall be utterly void and of none Effect.' "

The Court cited *Jacobs v. Schwartz*, 179 Md. 605, 20 A. 2d 489 (1941), and quoted from page 608, where the Court had said:

> "In our opinion the evidence here is of an express trust, proved only by oral testimony, not evidenced by writing in accordance with Section VII of the *Statute of Frauds.* * * * the decree appealed from should be affirmed."

It is true that in *Messick* the land had not been sold, so that the Court was concerned only with an alleged oral trust

in land. If there was a trust at all, it had not yet become a trust in the proceeds of the sale of land. But the Court did not recognize even the possibility of a later and separate trust in the proceeds of sale, which might be governed by a different rule of law. It took the allegations of the appellants as asserting only one trust. The Court said, at 537:

"The testimony, therefore, of verbal declarations after the grant by the grantor in his lifetime, that he intended this property conveyed by deed absolute in form to be sold by the grantee and the proceeds distributed among his children is a verbal declaration of trust and this testimony should not have been received in evidence. It is unnecessary to refer to other authorities as the law is determined in this State that an express trust must be evidenced by writing in accordance with the seventh section of the Statute of Frauds * * *."

It follows that if an express oral trust involving land is void, then an alleged trust or promise involving the proceeds of the sale of the land is also void. Such a result follows even more clearly from the decision of the Court of Appeals in *Kidd v. Carson*, 33 Md. 37 (1870). In that case one member of the Kidd family had deeded certain land to Carson and Rowland, for a stated price, which was paid. Some years later, Carson's executors and Rowland sought to enforce a separate indebtedness, owed by the Kidd family. By way of defense, it was alleged that the deed was subject to an agreement that profits on resales of parts of the land would be credited to the family debt. The agreement had been reduced to writing, but had not been signed. It was stipulated that there had been substantial profits on resales.

The Court said, at 42:

"We have no doubt from reading the record that such an agreement was made, and that profits have been realized by them upon the purchase. But the agreement rests entirely in parol, and was not reduced to any writing signed or acknowledged by

the parties. To enforce it would be to change the character of the deed, which had been drawn and executed as the parties intended it, and 'to set up a conventional trust on the foundation of a special parol agreement.' This cannot be done. It would be in plain and direct violation of the statute of frauds, which provides that all declarations or creations of trust or confidences of any land shall be *utterly void,* unless manifested and proved by some writing signed by the party who is by law enabled to declare such trust."

Clearly, the Court applied the Statute of Frauds to hold void an alleged oral trust in the proceeds of sale of land, as well as in the land itself. Accordingly, we feel compelled to hold that if there was an express oral trust in the real estate of Guiseppi Guiliano and in the proceeds of the sale of that real estate, as alleged, the trust was void, and the Chancellor correctly dismissed the claims in the bill of complaint that were based upon the alleged oral trust.

## The Doctrine of Laches

Appellants argue as a separate point in their brief that, "The lower court erred in summarily dismissing on the basis of laches the appellants' claim that a constructive trust should be imposed." There are two fallacies in that argument. One is that the appellants did not claim that James Juliano was a constructive trustee, nor did they ask the court to impose a constructive trust. On the contrary, they alleged, in quite specific terms, an express trust, albeit oral, and asked the court to take jurisdiction of that trust, and require an accounting and distribution. There was no allegation in the bill of complaint that even suggested fraud, deception, undue influence, or any other wrongdoing by James.

The second fallacy, which arises from the first, is that the Chancellor did not dismiss a constructive trust claim on the ground of laches.

In his Revised Opinion, the Chancellor discussed each of

the two issues of law upon which a separate trial had been ordered. He first ruled that under the Statute of Frauds the alleged express oral trust was, as a matter of law, unenforceable and of no effect. He next considered the other issue before him, laches. He held, correctly we believe, that an action to recover trust property must be instituted within the time prescribed by the statute of limitations which would be applicable at law, and that the period began to run when the trust was terminated with the father's death on 18 June 1970. He pointed to the delay of $3\frac{1}{2}$ years in bringing the suit, and held that the claim of an alleged oral trust was barred by laches, as well as by the Statute of Frauds.

The rule which the Chancellor applied was stated by the Court of Appeals in *Stevens v. Bennett*, 234 Md. 348, 199 A. 2d 221 (1964), where the Court said, at 351:

> "The authorities indicate that even when the remedy for a claimed right is only in equity the period of limitations most nearly apposite at law will be invoked by an equity court, provided there is not present a more compelling equitable reason — such as fraud or other inequitable conduct which would cause injustice if the bar were interposed — why the action should not be barred. [Citations omitted] * * * Judge Henderson, for the Court, said in *Berman v. Leckner*, 188 Md. 321, 328: 'There is no doubt that limitations will apply by analogy, to proceedings in equity as well as to actions at law, particularly where the jurisdiction is concurrent.'"

Citing *Stevens v. Bennett, supra,* and other cases, the Court of Appeals, in *Hall v. Barlow Corporation*, 255 Md. 28, 255 A. 2d 873 (1969), said, at 41-42:

> "These defenses [limitations and laches] may be raised by demurrer to a bill of complaint when they appear upon the face of the bill of complaint that these defenses are a bar and generally the statute applicable to actions at law will be followed by analogy by the equity courts."

See also *Bowie v. Ford*, 269 Md. 111, 304 A. 2d 803 (1973).

Perhaps because the Statute of Frauds expressly removes implied trusts from its bar, the Chancellor commented that the "doctrine [of laches] applies with equal force to claims for constructive or resulting trusts wherein the action is instituted more than three years after repudiation."

Although we have decided that the Statute of Frauds bars the claim that James holds the proceeds of sale of the father's real estate under an express oral trust, we also decide that the same claim is barred as well by laches, applying the analogous three year period of limitations.

In addition we decide that laches or limitations bars any right against James concerning the rent and social security payments alleged to have been received by him as trustee, in the total amount of $4,400.[7]

## The Employment Contract

After having disposed of the trust aspect of the bill of complaint, the Chancellor scheduled and held a full scale trial on what was essentially a breach of contract suit.

Lawrence and Mary Juliano claimed that each had worked for their brother, James Juliano, in Jimmie's Self-Service Market, which James owned and operated in Cumberland. Lawrence worked in the store for about 15 years, beginning in 1958, and Mary worked for about six years, beginning in 1966. Each claimed that James agreed to pay the minimum wage, but actually paid less. Each also claimed that in addition to the agreement to pay wages, James agreed to pay a bonus ($15,000. to Lawrence and $10,000. to Mary) upon either the termination of the employment, or when the State of Maryland took James's property in a pending condemnation case.

Evidence on the significant issues was conflicting, to say the least. Credibility of the witnesses, and the weight of the

---

7. This aspect of the alleged trust was not mentioned as a separate item in the Revised Opinion below, nor is it even referred to in the brief or argument of any of the parties here, even though it stands on a different footing from a trust of land, or proceeds of sale of land.

evidence, had to be determined by the Chancellor, as the trier of the facts.

Rejecting some of the contentions of the appellants as not credible, the Chancellor held that they had wholly failed to carry their burden of proving the alleged oral contract, and dismissed the claim. His judgment on the facts was not clearly erroneous. Maryland Rule 1086.

*Judgment affirmed.*
*Appellants to pay costs.*