Gordon A. Ramsay et al., Appellants, v. Robert S. Ramsay, and American National Bank and Trust Company, Appellees.

Gen. No. 46,840.

First District, First Division.

June 7, 1956.

Released for publication June 25, 1956.

Mitchell and Conway, of Chicago, for plaintiffs-appellants; Robert J. Downing, Thomas J. Russell, and John F. Neylan, all of Chicago, of counsel.

Kirkland, Fleming, Green, Martin & Ellis, of Chicago, for defendants-appellees; John B. Martineau, George L. Haggard, and Don H. Reuben, all of Chicago, of counsel.

PRESIDING JUSTICE FRIEND delivered the opinion of the court.

Plaintiffs appeal from an order of the Superior Court allowing defendants' motions to dismiss, under section 48 of the Civil Practice Act (Ill. Rev. Stat. 1955, ch. 110 [§ 48]), a suit in equity for the establishment of a constructive trust on certain real and personal property.

The case was decided solely on the basis of the pleadings and affidavits. The complaint consists of two counts. Plaintiffs allege in count I that the testatrix, Edith Symonds Ramsay, died September 10, 1948, leaving a last will and testament which had been executed on May 31, 1935 in the presence of defendant Robert S. Ramsay; that decedent reposed the utmost confidence in Robert and relied completely on him, and was influenced, guided and controlled by him in all business affairs; that in reliance on his advice, and by reason of the fiduciary relationship between them, she informed him that she was devising all her property to him, with the understanding that he would hold it in trust for the benefit of Gordon A. Ramsay, her husband, and of Robert, Gordon, Jr., and Kenneth, her children; that Robert promised to so hold it; that she accordingly devised the property in that manner in her will; that he informed the plaintiffs of the trust and promised to fulfill it; but that he has since refused their repeated requests to do so. In count I plaintiffs sought the declaration and establishment of a constructive trust and the declaration of plaintiffs' equitable rights in and to the property received by Robert.

Count II as amended alleges that in 1902 Gordon A. Ramsay, Sr., Robert's father, was the legal owner of certain real property in Glencoe, Illinois, and that he had furnished all the consideration for the purchase thereof; that he transferred the property without any consideration to certain persons to hold it for his use and benefit; that in 1934 Robert advised and requested his father to transfer title to the property to a trustee for the use and benefit of Robert so as to relieve his father of the burdens and responsibilities of legal ownership, and promised him that the avails of the property would be held for the senior Ramsay's use and benefit; that thereafter, in reliance on the promise, Ramsay, Sr., executed a deed with his wife, the dece-

462

dent, transferring the property to the defendant, American National Bank and Trust Company, as trustee, for the use and benefit of Robert, under trust No. 2807; but that the request by Ramsay, Sr., of his son Robert to carry out his promise has been ignored. Count II likewise requested the establishment and declaration of a constructive trust in and to this real estate.

The motions of defendants set forth the defenses of res judicata and release as to count I, and the absence of a writing as required by the Statute of Frauds (Ill. Rev. Stat. 1955, ch. 59, sec. 9), as to amended count II. In support thereof defendants filed the affidavit of John B. Schmidt, who had represented Robert Ramsay in his capacity as executor when the estate was probated; in addition they filed a copy of objections to the final account in the Probate Court, copies of receipts for specific bequests signed by the plaintiffs Gordon A. Ramsay, Jr., and Kenneth S. Ramsay, and a reproduction of the tract book for the real property in question. In opposition plaintiffs filed counteraffidavits and the transcript of proceedings before William F. Waugh, Judge of the Probate Court.

Additional facts necessary for consideration of the issues involved disclose that by the terms of her will decedent made various specific bequests to all her sons and her husband, and then bequeathed the remainder of her estate to Robert. The will named Gordon Ramsay, Sr., decedent's husband, and Robert and Gordon, Jr., her sons, as co-executors; however, only Robert served.

Ramsay, Sr., was anxious that his wife's will be probated without delay. Accordingly, to avoid the loss of time needed to publish for heirs, he filed his appearance in the Probate Court, waiving all notice and consenting to an immediate hearing. He also persuaded his sons Gordon, Jr., and Kenneth to file appearances of

similar import with the court. As a result of this procedure, the will was shortly admitted to probate.

After letters testamentary were issued, Ramsay, Sr., as surviving spouse, formally renounced the will and ultimately, upon distribution, received his statutory share consisting of one-third of all his wife's net assets. Thereupon he executed the following instrument: "The above assets are received in full payment and satisfaction of the undersigned's distributive share of the Estate. . ."

Gordon Ramsay, Jr., and his brother Kenneth also received a part of their mother's estate; however, their respective distributions were as originally provided for in the will. Like their father, both brothers, upon receiving their legacies, executed instruments stating that the assets received by each were in "full payment of my distributive share under the Will of Edith Symonds Ramsay." When the chancellor heard the motion to dismiss filed herein, Kenneth and Gordon Ramsay, Jr., in an effort to resist the plea that these instruments were in the nature of releases, filed affidavits alleging that they had executed the instruments solely at their brother Robert's request, and they now claim that they signed only because they relied completely on Robert's representation that the documents were mere receipts.

Late in 1949 when Robert as executor was ready to close his mother's estate, he submitted his final accounts for the court's approval. Ramsay, Sr., in his capacity as surviving spouse, filed various objections to Robert's accounting. One of the objections was that Robert had paid too much Illinois inheritance tax because the tax was computed on the theory that Robert was "to receive his residuary legacy under the Will . . . unconditionally, whereas in truth and in fact this residuary legacy is to be held for the use and benefit of the members of the family; a disclosure of the

464

true facts would result in a saving of Illinois Inheritance Taxes." Hearing upon these objections was had in January 1950; early in the proceeding the Probate Judge stated that he had previously held "that there was no obligation under the Will to hold any of these assets in trust . . ." Accordingly, most of the hearing reported was concerned with the propriety of attorney and executor fees. Kenneth and Gordon Ramsay, Jr., both testified in support of their father's objections. After proofs were closed, the Probate Court orally ruled upon each of the objections. Objection No. 3, relating to the computation of the Illinois inheritance tax, was specifically overruled. No appeal was taken from that ruling. Decedent's estate was closed in December 1953, and this suit was filed some thirteen months later.

It will be noted that count II involved a totally separate cause of action between Ramsay, Sr., as plaintiff, and his son Robert and the American National Bank as defendants. It appears that in 1902 Ramsay, Sr., acquired the realty located at 100 Beach Road, Glencoe, Illinois, taking title by warranty deed. He held this property until 1908, at which time he conveyed all his interest to his mother by warranty deed. His mother held the fee until 1912, when she conveyed by warranty deed to decedent, who retained ownership until 1934, and then, with her husband joining, conveyed the land by deed in trust to the present holder, the American National Bank and Trust Company. Robert has been the trust's sole beneficiary since its inception.

Count II, as originally filed, alleged that Ramsay, Sr., owned the land in fee simple from 1902 to 1934, that in 1934, in reliance upon the advice of Robert and solely to relieve himself "of the responsibilities and burdens" of holding legal title, he (Ramsay, Sr.) conveyed the land to American National Bank, naming Robert as beneficiary of the trust so created. Robert in

465

turn, however, was alleged to hold his beneficial interest in trust for the benefit of his father. Ramsay, Sr., prayed that the legal and equitable titles be reconveyed to him, and that he be accorded an accounting. The complaint did not mention that Ramsay, Sr., had been out of title since 1908. In the circumstances the court allowed Robert Ramsay's motion for an order requiring plaintiffs, pursuant to the then Rule 17 of the Supreme Court [Ill. Rev. Stats. 1955, ch. 110, § 101.17], to file a sworn list of documents. The list filed, like the complaint, contained no reference to any writing that would evidence the existence of a trust, as alleged by Ramsay, Sr. Thereafter, Robert filed a motion to strike and dismiss, pleading the Statute of Frauds, and the chain of title since 1902; the bank also filed a motion to strike and dismiss. Both motions were allowed, and an amended complaint was then filed which alleged that although Ramsay, Sr., had been out of title since 1908 he had always been the sole equitable owner of the property, thus averring that his mother and his wife were, and now the bank and Robert are, trustees, and that he is the bona fide owner of the property. The amended complaint also alleged that the sole purpose for the various conveyances made since 1908 was to relieve Ramsay, Sr., of the "burdens and responsibilities imposed on the legal title holder of the said property." Motions to strike and dismiss the amended count II, pleading the Statute of Frauds, were allowed, and the action was dismissed as to both counts.

Defendants contend that res judicata bars count I. They argue that plaintiffs cannot claim that Robert Ramsay is trustee of the residuary assets of his mother's estate because that issue was adjudicated against them in the Probate Court, and they rely upon two circumstances arising in that court during the course of an extended hearing. The first of these was a statement by Judge Waugh that "I have already ruled

that there was no obligation under the Will to hold any of these assets in trust and this represents a prospective settlement of a controversy . . . between Mr. Ramsay and his son." This statement was made by the court during an examination of John B. Schmidt, Robert Ramsay's former counsel. The immediate question was whether these services were compensable out of the estate of the deceased or whether they were services for which Robert should pay in his individual capacity. Mr. Schmidt had testified that after Mrs. Ramsay's death he had prepared the first draft of a testamentary trust calculated to produce harmony among the members of the Ramsay family, but the draft was not produced in court. While Mr. Schmidt was being examined as to the provisions of the draft Judge Waugh suggested that "the agreement itself would be the best evidence of what it contains if it is still in existence," and subsequently expressed doubt as to whether the terms of the agreement were material. Counsel for defendants then stated that in his opinion they were not; that he merely wanted to show that such an agreement had been prepared, but that it had never been executed. It was at this point that the court made the quoted statement upon which defendants rely. Since an examination of the entire transcript of testimony taken in the Probate Court fails to disclose that any evidence was introduced or any hearing whatever had upon the question whether Robert Ramsay held the property devised to him by his mother as trustee for the benefit of defendants, it is difficult to conceive how Judge Waugh's statement could be considered as an adjudication on that question. Affidavits filed by defendants in support of their motion to dismiss reveal that no hearing was ever had by the Probate Court with respect to the constructive trust sought to be enforced in count I. Obviously the reason no hearing was had to determine that issue was because the Probate Court had no juris-

467

diction to establish or administer a constructive trust, which was the only issue involved in count I. Judge Waugh evidently recognized this fact because in the course of the hearing before him, George A. Reilly, attorney for Gordon A. Ramsay, Sr., in calling the court's attention to the fact that the parties had carried on settlement negotiations for about a year which were never consummated and never resulted in an agreement, sought to make the point that "where a party obtains a legacy from a decedent by representation on an agreement, that upon receiving that property, that party will dispose of it in a certain manner, that that is an agreement that is enforceable in a court of chancery," to which Judge Waugh replied: "Yes, but we are not in a court of chancery at the moment"; he thus clearly indicated he recognized that such an issue could be determined only in a court of chancery, and not in the Probate Court.

██ The other circumstance relied on by defendants in support of their contention that res judicata bars count I was an order overruling Ramsay, Sr.'s, objection No. 3 to the executor's report. This objection urged that because of the alleged existence of a trust Robert as an executor paid an excessive inheritance tax, and that he should have been made to account for the overpayment; and defendants argue that the Probate Court had to construe Mrs. Ramsay's will to ascertain whether or not a trust was in fact created. It is urged that in overruling Ramsay, Sr.'s, objection No. 3 to the final account, the Probate Court unequivocally held that no trust whatever had been created by Mrs. Ramsay, and that plaintiffs now seek to make a collateral attack upon a Probate Court order from which no appeal was taken. Alcorn v. Alcorn, 309 Ill. App. 267, and Marshall v. New Amsterdam Casualty Co. of Baltimore (Abst.), 318 Ill. App. 636, are cited in support of this contention. In the Alcorn case the trust

■■■■■

involved was sought to be enforced against the decedent, not against the legatee of the will of the decedent. Of course such a complaint would have to be filed as a claim against the estate of the alleged constructive trustee after his death, just as here plaintiffs would have to file a claim against the estate of Robert Ramsay if he were deceased at the time of the alleged breach of the constructive trust. In the Marshall case, a suit against a surety on an administrator's bond was held barred by res judicata because no appeal was taken from the final account of the administrator. Clearly the Probate Court has jurisdiction to approve final accounts and acts of the administrator in his capacity as administrator; and findings in favor of the administrator as such may be availed of by a surety whose only liability depends on the liability of his principal, the administrator.

■ This evidence and the statement of Judge Waugh heretofore quoted do not meet the requirements necessary to bar plaintiffs from asserting the cause of action contained in count I. The rule is well established as stated by the Supreme Court in the early case of Board of Directors of Chicago Theological Seminary v. People ex rel. Raymond, 189 Ill. 439 (1901), that "the burden of proof is always upon the defendant, who pleads *res judicata* because of a former judgment, to set up that judgment, and show what was determined by it, and what is common to the subsequent action. The proof must be clear, certain and convincing." See also Williams v. Williams, 265 Ill. 64.

■ Aside from these considerations, the Probate Court does not have jurisdiction to declare or administer constructive trusts. The jurisdiction of the court is restricted by section 20 of article VI of the Illinois Constitution. It has been consistently held that the Probate Court has no jurisdiction over trusts constructive or expressed. Dingman v. Beall, 213 Ill. 238; How-

469

ard v. Swift, 356 Ill. 80; Teel v. Mills, 117 Ill. App. 97. A law which vested jurisdiction in the Probate Court to establish, supervise or control trusts created by wills proved and probated in the Probate Court was held unconstitutional in 1911 in In re Estate of Mortenson, 248 Ill. 520, as well as in Frackelton v. Masters, 249 Ill. 30. In the Mortenson case, with reference to the jurisdiction of a Probate Court to rule on trust problems, the court said: "If a testator devises various tracts of land to different persons and as to one of them deems it wise to create a trust, the control and supervision of that trust is no more a probate matter than it would be to partition lands devised to tenants in common to see that each one obtains a just and proper share of the property according to the intention of the testator." In the Frackelton decision the Supreme Court, holding that the Probate Court could not exercise jurisdiction over trusts, said that "the administration of testamentary trusts has no more relation to the settlement of the estates of deceased persons than the foreclosure of mortgages executed by or in favor of the deceased, or bills for partition filed for the purpose of partitioning the real estate of the testator among those persons entitled thereto. If the legislature may transfer original jurisdiction to probate courts of testamentary trusts, it is difficult to see the limit of its powers in that regard. We are of the opinion that the legislature is without constitutional power to invest probate courts with this general equity jurisdiction." The doctrine enunciated in these opinions was followed in more recent cases: Rosen v. Rosen, 370 Ill. 173 (1938); London & Lancashire Indemnity Co. of America v. Tindall, 377 Ill. 308 (1941).

There is of course a clear distinction between the functions of an executor and those of a trustee. On its face the will unequivocally passes the property to Robert as legatee, and it is in this capacity that plain-

470

tiffs seek to impose upon him the obligation to hold the property in trust. Obviously no constructive trust could arise until after Robert received the distribution of the corpus of the trust; and this could not occur until he filed his final account, was discharged as executor, and the estate closed. This principle is made clear in the Mortenson case, wherein the court, in discussing the lack of Probate Court jurisdiction over trusts, said: "The settlement of an estate, in legal significance and common understanding, is the process by which letters testamentary or of administration are granted, assets collected, claims allowed, debts paid, real estate sold if necessary for the payment of debts, and the property distributed to those who are entitled to it by the laws of descent or by the will. Such settlement has no relation to the management or execution of trusts, which are either entirely independent of the administration of the estate by the executor or administrator to the same extent that a devise of real estate is independent of such administration, or, if the trust is in the residue of property committed to the executor, can only become operative after the settlement of the estate is completed and the trustee receives the property from the executor." By its very nature a suit to impose or declare a constructive trust implies the existence of a trustee in whose hands the res of the trust are held; and of course until Robert Ramsay as executor of his mother's estate rendered a final account, any proceeds therefrom would be held by him in the capacity of an executor. His role as trustee could not be assumed until the estate was closed, when the jurisdiction of the Probate Court over the matter would cease. Wylie v. Bushnell, 277 Ill. 484; Fenton v. Hall, 235 Ill. 552. These cases are illustrative of the separate and distinct functions and capacities characteristic of an executor and a trustee.

Aside from the absence of evidence in the Probate Court as to whether or not Robert, after the closing of

471

the estate, repudiated a promise made prior to his mother's death, we entertain no doubt as to the rule that the Probate Court had no jurisdiction to declare a constructive trust. Defendants argue that the Probate Court had to construe Mrs. Ramsay's will to ascertain whether or not a trust was created. The will was clear and unambiguous and required no construction, since it unequivocally conveys the property to Robert. Moreover, a constructive trust, as alleged in the complaint, is not expressly created by the will but would arise from promises made by defendant prior to the execution of the will, which plaintiffs allege were later repudiated by the legatee. See Bogert, Handbook of the Law of Trusts (1921), p. 137.

██ Defendants take the position that count I should have been dismissed because of certain receipts for specific legacies signed by plaintiffs in the Probate Court. The decedent's will, after directing that all debts and funeral expenses be paid, specifically bequeathed to Robert "my antique desk"; to Gordon, Jr., "my diamond bar pin and my diamond bracelet"; to Kenneth "my diamond engagement ring"; and to her husband the sum of $1000. All the rest, residue and remainder of her estate, real, personal and mixed, she devised and bequeathed to Robert, his heirs, executors and assigns forever. Exhibits received in evidence disclosed that Gordon, Jr., acknowledged that he had received from Robert as executor "full payment of my distributive share under the Will of Edith Symonds Ramsay . . . , namely (1) Flexible diamond and sapphire bracelet and (1) 'bow knot' diamond bar pin"; and that Kenneth, without describing the bequest, acknowledged that he had received from Robert as executor "full payment of my distributive share under the will of Edith Symonds Ramsay . . ." Of course these documents merely acknowledged receipt by the two sons of the limited bequest of personal property

provided for in the will and cannot be held as releasing Robert from obligations which are not related in any manner to his duties as executor; such obligations as alleged in count I could not arise until after the close of the estate, and consequently the receipts could not operate as a release thereof. Moreover, plaintiffs are not attacking the will. As to Ramsay, Sr., renunciation of his rights under the will, by which he received one-third of the estate, bars him from claiming any further interest. The alleged constructive trust was intended to cover the residuary estate of the testatrix. By renouncing under the will, Ramsay, Sr., took from the residuary estate one-third of the property and cannot claim any interest in the remainder which went to Robert. The alleged constructive trust can be effective, if at all, only as between Robert and his brothers.

As to count II, defendants contend that the absence of a writing, as required by the Statute of Frauds, operates as a bar. Under this count, Ramsay, Sr., sought to obtain real property which he had not owned since 1908. He attempted to span this half-century lapse of title by asserting that all who owned the realty after him were acting solely as his trustees; namely, that his mother was his trustee from 1908 to 1912; his wife from 1912 to 1934; and Robert from 1934 to date. This latter averment is made despite the fact that since Robert holds only a beneficial interest in the realty, Ramsay, Sr., does and must claim that Robert is trustee of a trust interest. It is apparent that the allegations of count II do not plead a constructive trust; only an express trust is alleged. Both the 1908 and 1912 "trusts" are based solely upon promises allegedly made successively to the senior Ramsay by his mother and wife to hold the land in question for his use and benefit. Neither conveyance is claimed in any way to have been caused or provoked by reason of a fraud or an abuse of confidence and fiduciary relation-

ship—the absolute prerequisites to a constructive trust. As a matter of fact, it is affirmatively alleged in count II that Ramsay, Sr., was the moving and dominant party in both transactions. The 1908 conveyance was initiated by him because he was making a foreign trip and did not want to hold title in the interim; the 1912 conveyance was made at his "special instance and request," at which time he caused the deed to be prepared and recorded. A trust predicated upon a promise to hold land for the use and benefit of the grantor is express and can be enforced only by a writing. Potter v. Clapp, 203 Ill. 592. See also Roche v. Roche, 286 Ill. 336; Stubbings v. Stubbings, 248 Ill. 406; and Ryder v. Ryder, 244 Ill. 297. Obviously the 1908 and 1912 "trusts" are express trusts and are therefore void for want of a writing. The sworn list of documents filed pursuant to the trial court's order makes no reference to any document that would satisfy the statute. Accordingly, we hold that count II was properly dismissed for failure to manifest and prove a writing.

 Pending this appeal, defendants moved to transfer count II to the complaint to the Illinois Supreme Court on the ground that a freehold was involved; the motion was taken with the case. Since the issue involved in this appeal is whether the trial court was in error in sustaining a motion to dismiss count II, and not as to whether title to or ownership of land was involved, the motion is denied. See McCarthy v. McCarthy, 6 Ill.2d 52.

For the reasons indicated, the order of the Superior Court dismissing count I of the complaint is affirmed as to Gordon A. Ramsay, Sr., but reversed as to the other two plaintiffs, and the cause remanded with directions that defendants be required to answer that count as to the two latter plaintiffs; the order dismissing count II is affirmed; and the motion to transfer the cause to the Supreme Court is denied.

474

Order as to count I affirmed in part and reversed in part, and the cause remanded with directions; order as to count II affirmed; motion to transfer cause to Supreme Court denied.

BURKE and NIEMEYER, JJ., concur.