In the Matter of the Estate of Louise W. Hirsh, Deceased.

Re: Louise Q. Pence, Petitioner and Claimant, Appellant, v. Arthur H. Zellar and Robert E. Gottner, Executors of the Will and Estate of Louise W. Hirsh, Deceased, Respondents, Appellees.

Gen. No. 48,012.

First District, First Division.

September 26, 1960.

McKeown, Trussell, Brooks, and Boland, of Chicago (John C. Trussell, of counsel) for appellant.

Robert E. Gottner, of Chicago, for appellees.

MR. JUSTICE BURMAN delivered the opinion of the court.

Louise Q. Pence filed her claim in the Probate Court against the estate of Louise W. Hirsh, deceased. The respondents waived a trial by jury and at the close of the proceedings the trial court disallowed the claim. This appeal followed.

The material facts involved in this appeal are not in dispute. Louise W. Hirsh had been a friend of Louise Q. Pence and her family for over thirty years, and on October 1, 1943, and July 1, 1945, Mrs. Hirsh purchased with her own funds, $6,000.00 in United States Savings Bonds, Series G. The bonds were issued and payable to "Louise W. Hirsh or Mrs. Louise Q. Pence" and remained in possession of Mrs. Hirsh. Two of the bonds matured October 1, 1955, and four bonds matured July 1, 1957. Mrs. Hirsh was declared mentally incompetent on April 3, 1956, and The First National Bank of Chicago was appointed Conservator and in that capacity received possession and control of the bonds. In 1957, after all the bonds matured, the Conservator cashed all of the bonds, without court order, and reinvested part of the proceeds in bonds and retained part in cash. The total value of the conservatorship estate exceeded $800,000.00 and the Conservator conceded that it was not necessary to cash the bonds for the maintenance or support of its ward.

Mrs. Hirsh died on February 23, 1958, and her will, executed on July 17, 1954, was filed for probate. Robert E. Gottner and Arthur H. Zellar, defendants, were appointed co-executors. Mrs. Pence alleged in her petition that under Illinois Law and United States Treasury regulations she had a vested interest and right of survivorship in the bonds and that the Conservator could not legally divest her of her rights by cashing the bonds without a court order. She prayed that a trust be impressed upon the proceeds or that she have a general claim against the estate.

On November 2, 1959, the Probate Court disallowed the claim of Mrs. Pence and found that the amount

involved exceeded $3,000.00. The case was decided solely on the pleadings and exhibits offered. Plaintiff appealed directly to this court as provided in Ill. Rev. Stat. (1959), Ch. 3, Sec. 483.

█ The respondents, although successful in the trial court, contend that the Probate Court has no jurisdiction to declare or administer constructive trusts. They raise the jurisdictional issue here for the first time. We recognize that the question of jurisdiction of the subject matter may be urged at any time either in the trial court or in the reviewing courts. Jarrett v. Jarrett, 415 Ill. 126, 112 N.E.2d 694; Barger v. Slayden, 411 Ill. 237, 103 N.E.2d 645; and Martin v. Schillo, 389 Ill. 607, 60 N.E.2d 392. In support of their contention respondents refer us to the Constitution of Illinois, 1870, Art. VI, Sec. 20; London & Lancashire Indemnity Co. of America v. Tindall, 377 Ill. 308, 36 N.E.2d 334; and Ramsay v. Ramsay, 10 Ill.App.2d 459, 125 N.E.2d 172. The Illinois Constitution provides, among other things, that probate courts "shall have original jurisdiction of all Probate Matters [and] the settlement of estates of deceased persons. . . ." Pursuant to this provision, the legislature has used almost identical language in defining the jurisdiction of Probate Courts. Ill. Rev. Stat. (1959), Ch. 37, Sec. 303. County Courts have similar probate jurisdiction under the Illinois Constitution of 1870, Art. VI, Sec. 18, and Ill. Rev. Stat. (1959), Ch. 37, Sec. 175.

█ We agree with the respondents that the Probate Court does not have the general jurisdiction over trusts, constructive or expressed. This subject was fully discussed in Ramsay v. Ramsay, 10 Ill.App.2d 459, 125 N.E.2d 172. In that case a suit was brought in Superior Court against a defendant who was both administrator and general legatee of an estate to impose a constructive trust on his legacy on the grounds that it was devised to him with the understanding that he would hold it for the plaintiffs' benefit. The court

231

goes on to discuss at length that it is in defendant's capacity as legatee that the trust is sought to be imposed and that it is only after the estate is closed that he will hold as legatee, and that therefore the claim is totally independent of the administration of the estate.

In holding that no Probate matter was involved in the London & Lancashire Indemnity case our Supreme Court stated that the claim of a third party against an heir was "a matter of indifference to the administrator, or to the settlement of the estate, to whom he pays the distributive share of one of the heirs." The court went on to reaffirm the rule that the Probate Court has no general equitable jurisdiction, but specifically pointed out that the finding was based on the fact that "no claim was presented against the estate, nor any right claimed in estate assets."

Several early Illinois cases have affirmed the exercise of equitable process by probate or county courts in various situations. A county court, in exercise of its probate powers, had jurisdiction over a claim based on an equitable assignment of a contract not assignable at law. Dixon v. Buell, 21 Ill. 203. Shepard v. Speer, 140 Ill. 238, 29 N. E. 718, involved a bill in equity by which an administrator tried to have a court of chancery take jurisdiction of the remaining claims against a complicated estate because of the difficulties in adjusting the equitable rights of the parties. The Supreme Court said that equity could not oust the probate court of jurisdiction. "The fact that the matters alleged are such as are usually cognizable in a court of equity, does not affect the question, as in the settlement of estates the probate court is not confined to the exercise of legal powers, but may also exercise equitable powers in the adjudication of all matters pertaining to the settlement of estates."

■■ In the case at bar, we are of the opinion that the Probate Court had jurisdiction of the parties and

232

the subject matter, and is as competent to afford the relief in this case as is a court of equity. Any other result would seriously embarrass and delay the settlement of estates and subject them to unnecessary and oppressive costs. The term "Probate," in common usage, is used with reference to the proceedings incident to the settlement of decedents' estates. Frackelton v. Masters, 249 Ill. 30, 94 N. E. 124.

 The controlling question before us is, whether Mrs. Hirsh intended to give the bonds to Mrs. Pence at the time she became incompetent and from which condition she never recovered. From a reading of the regulations of the United States Treasury Department, the Conservator had a legal right to cash these bonds when he did so. Further, our statutes require conservators to keep their ward's property invested, Ill. Rev. Stat. (1959), Ch. 3, Sec. 412, and the bonds in this case had ceased to bear interest. It therefore became the Conservator's duty to request payment of the bonds from the United States Treasury. Respondents argue that when the Conservator qualified, under the regulations of the Treasury Department governing United States Bonds, to receive payment as the Conservator of Mrs. Hirsh, that by those rules and regulations the right of survivorship by Mrs. Pence as co-owner ceased. We do not believe the United States Treasury regulations have any bearing on the question before us. After the bonds were paid the Treasury Department regulations no longer controlled the rights of the parties. Respondents also rely on Ill. Rev. Stat. (1959), Ch. 3, Sec. 369, which enables a conservator to "settle all accounts of his ward and demand and sue for and receive in his own name, as guardian or conservator, all personal estate and claims of the ward." This, like the treasury regulations, may give a conservator the procedural authorization to cash the bonds on behalf of his ward and to reinvest the proceeds in his name in accordance with our statutes, but the con-

233

servator does not have the authority or the right to decide the rights of the parties, and it was its duty to serve notice on the co-owner of the bonds and have the issues determined by the court. A conservator exists solely through our statutes and acts subject to the control of our courts.

Our courts have not passed on this precise situation. Respondents cite Manta v. Kahl, 348 Ill. App. 373, 108 N.E.2d 781. This case does not involve United States Government Bonds but concerns a joint bank account and the court found the complaint lacked essential allegations. The other party there sued the bank and the court does not deal with his rights against the conservator or the ward's estate. Plaintiff cited In re Estate of Johnson, 351 Ill. App. 111, 113 N.E.2d 590. This case involves a situation quite similar to ours except that it does not appear there that the government bonds had matured and that reinvestment was necessary. The court found that the co-owner was entitled to recover the proceeds of cashed bonds from the deceased ward's estate. No point was made there that the Probate Court had no jurisdiction of the constructive trust. This court appeared to rely heavily on the reasoning of Lewis v. Hill, 317 Ill. App. 531 (dismissal of complaint reversed and remanded), 322 Ill. App. 68 (judgment on pleadings affirmed), affirmed, 387 Ill. 542. The rationale of the Lewis case is equally applicable here.

In Lewis, a conservator sold unproductive real estate belonging to his ward pursuant to a court order, in the expectation that the proceeds would be needed for the ward's support. The ward died before any of the money was actually expended for her support, and left a will devising the property to the plaintiff who then sought to impose a constructive trust on the proceeds. The estate claimed that an ademption had occurred. As in our case, the plaintiff's claim would have been defeated if at any time the deceased, while com-

petent, had converted the property as the conservator did. As in our case, the estate claimed that the conversion, admittedly made for a proper purpose and within the conservator's power, incidentally operated to defeat the interest plaintiff otherwise would have had upon decedent's death. The Appellate Court held that the mere conversion by the conservator should not be permitted to defeat the deceased's intention expressed in her will, and imposed a constructive trust on the proceeds. In affirming, the Supreme Court stated that furtherance of the ward's interest governed the management of his property, that conveyances by a conservator are not regarded as conveyances by the ward. The conversion was regarded as taking place only for the purpose for which it was authorized, and that otherwise the fund would be regarded as a substitute for the property and that the conversion would not operate to transfer the fund to the residuary legatees. The more strict view taken by some jurisdictions was said not to be "in harmony with the fundamental principles of equity heretofore adopted and announced by the decisions of this court." We reach the same result when deceased's intent is evidenced by a form of ownership providing for survivorship, rather than by a will.

Respondents contend that even if the Treasury Department regulations do not cover the issue presented by the record, the law of Illinois does not permit a joint tenant to take any part of property held in joint tenancy upon the death of the other joint tenant, if the surviving joint tenant did not contribute anything to said joint tenancy, unless the surviving joint tenant proves a donative intent on behalf of the deceased. Respondents state that the proceeds of the bonds belong to the estate and not to Mrs. Pence.

We are of the opinion that when Mrs. Hirsh was adjudged incompetent, this locked the wheels, so to speak, in fixing the rights of the parties. Thereafter, Mrs.

235

Hirsh was no longer competent to attend to her own affairs. Mrs. Hirsh did not redeem two of the bonds after their maturity even though they no longer bore interest, evidencing her intent to give them to Mrs. Pence. The only act by Mrs. Hirsh while competent to manage her affairs in regard to these bonds was in the execution of her will where she expressly referred to co-owner bonds, as follows:

> "TENTH: As I have made other provisions for some of my friends by purchasing from time to time government bonds either in my name. and payable on death to a designated person, or in my name jointly with another designated person, I do not specifically mention them in this my Last Will and Testament.
>
> "ELEVENTH: It has been and it is my desire to provide in a reasonable manner for the education and needs of certain minor persons. To achieve that purpose I have, by the purchase of government bonds, made funds available."

Under United States Treasury regulations, if Mrs. Hirsh predeceased Mrs. Pence, the. latter would have taken the entire proceeds. For all intents and purposes, Mrs. Hirsh died leaving the bonds with the right of survivorship to Mrs. Pence. The Conservator had no authority to divest Mrs. Hirsh of her rights as the co-owner of the bonds, unless the proceeds were necessary for the support and maintenance of the incompetent, which was not the case here. Divesting Mrs. Pence of her rights as a co-owner of the bonds is a right that is personal and could only be performed by Mrs. Hirsh.

For the reasons expressed here, we find that Mrs. Pence is entitled to her claim against the estate of Louise W. Hirsh, Deceased, in the sum of $6,000.00,

with interest from the date of Mrs. Hirsh's death on February 23, 1958.

The Judgment of the Probate Court is reversed and remanded with directions.

Reversed and remanded with directions.

KILEY, P. J. and MURPHY, J., concur.