THERESA ROZYCKE, Conservator, Petitioner-Appellee, *v.* JOSEPH SROKA, Respondent-Appellant.

(No. 70-66;

Fifth District—January 14, 1972.

Hendricks & Watt, of Murphysboro, (David W. Watt, Jr., of counsel,) for appellant.

Hohlt, House, DeMoss & Johnson, of Pinckneyville, (Don Johnson, of counsel,) for appellee.

Mr. JUSTICE JONES delivered the opinion of the court:

This action was a citation to recover property brought by Theresa Rozycke as conservator of the person and estate of Frances V. Simpson, Incompetent, against Joseph Sroka to recover proceeds of a bank account which Rozycke claimed Sroka held and which was part of the estate of the incompetent. After a hearing the trial court found the proceeds of the bank account were part of the estate of the incompetent and ordered the respondent to deliver them to the conservator. Respondent appeals.

Frances V. Simpson had four brothers and three sisters. On February 14, 1969, a conservator was appointed for her, the court finding "that Frances V. Simpson is an incompetent as defined in Section 112 of the Probate Act and is incapable of managing her person and estate." At the instance of her conservator a citation was issued against her brother, Joseph Sroka, alleging that the respondent had in his possession or control a savings account passbook "evidencing an account at Cass Federal Savings and Loan Association of St. Louis, Missouri, being an account opened on December 1, 1965, as Account No. 9647, and standing in the name of Frances V. Simpson or Joseph Sroka, either or survivor, which passbook belongs to the incompetent and which Joseph Sroka wrongfully refuses to deliver to petitioner after demand therefor." The conservator's inventory lists, among other items, a trust account in which the incompetent was a trustee, the savings account mentioned in the citation and two other accounts with a sister.

At the citation hearing Joseph Sroka testified that he had a deposit book (it does not appear on its face to be a passbook) for a savings account in the Cass Federal Savings and Loan No. 9647, dated December 1, 1965, certifying that Mrs. Frances V. Simpson or Joseph Sroka either or survivor holds a savings account representing share interests in the Cass Federal Savings and Loan Association of St. Louis. Respondent introduced in evidence a joint tenancy agreement dated September 1, 1960, showing the same account number, which card contained the following wording:

"(a) Simpson, Mrs. Frances V., or, and (b) Sroka, Joseph, her brother, as joint tenants with right of survivorship and not as tenants in common, and not as tenants by entirety, the undersigned hereby apply for a savings account in the Cass Federal Savings and Loan Association

of St. Louis and for issuance of evidence thereof in their joint names described as aforesaid. You are directed to acknowledge pursuant to any one or more of the joint tenants' signatures, shown below, in any manner in connection with this account, and to pay, without any liability for such payment, to any one or the survivor or survivors at any time. It is agreed by the signatory parties with each other and by the parties with you that any funds placed in or added to the account by any one of the parties is and shall be conclusively intended to be a gift at that time of such funds to the other signatory party or parties to the extent of his or their pro rata interest in the account. You are authorized to accept checks and other instruments for credit to this account, whether payable to one or more parties, and to supply any needed endorsement. * * *"

A note on the card states: "Note: The above is the correct way to establish a common law joint tenancy or its equivalent in any. * * *" This card was signed by Frances V. Simpson and respondent.

At the time of the signing of this card Frances V. Simpson was a resident of the State of Missouri. Although the petition for conservator alleges her residence in a nursing home in Washington County, Illinois, the petition was filed in Perry County where Mrs. Simpson was alleged to own real estate. After the citation was issued and on April 23, 1969, the conservator filed an instrument entitled "Declaration of Change of Domicile and Residence," declaring that henceforth Frances V. Simpson should be considered a resident and domiciliary of the State of Illinois for the reason that she is a patient in a nursing home in Washington County, Illinois.

It appeared from the deposit book that various deposits had been made to this account which, on January 27, 1965, contained $4,966.56. All of the deposits appeared to be dividends on the account. On March 17, 1969, a few days after a conservator had been appointed for the incompetent, but before any order of citation had been served upon the respondent, the entire balance was drawn out and the book cancelled. The respondent testified that he had the account transferred to his and his wife's name on the latter date.

Sroka was uncertain about the time when the joint account agreement was signed but he thought it was some eight years previously. No contention is made but that Mrs. Simpson was in full possession of her faculties at the time of the execution of the joint account agreement.

A conflict in evidence existed as to the circumstances under which the bank book came into the possession of Sroka. His evidence was that his sister, Theresa, gave it to him at some time prior to her appointment as

conservator when the sister, Theresa, was in the hospital. Theresa testified it was given to him at his request and Sroka testified that it was given to him at the entire volition of Theresa. It appeared that Theresa had found the bank book among the effects of Frances and that Theresa was taking care of some of the affairs of Frances at the time. It further appeared that Theresa was a joint tenant with Frances of another account, a portion of which had been used by Theresa as conservator for the care and upkeep of Frances. The portion remaining Theresa felt should be hers in that she should not have to use all of her joint account money while Joseph did not have to use any of his for the benefit of Frances.

The post trial motion shows that the ward died on May 24, 1969, three days prior to the entry of the order of the circuit court is the subject of this appeal. No question has been raised here with respect to the authority of the conservator to conduct this litigation and we decline to do so of our own motion.

■■ While it would appear that the determination of the ownership of this savings account would be governed by the laws of Missouri, neither party has informed either this court or the trial court in the proper way of the laws of Missouri, or asked that judicial notice be taken thereof, we accordingly assume that the laws of Missouri are identical to those of Illinois and our decision is based upon Illinois law. (*McCallum v. Baltimore & O. R. Co.*, 379 Ill. 60, 39 N.E.2d 340; *In Re Day's Estate*, 7 Ill.2d 348, 131 N.E.2d 50; *Kincaid Trust & Savings Bank v. Hawkins*, 234 Ill. App. 64.) We shall therefore assume that the act concerning joint rights and obligations, (Ill. Rev. Stat. 1969, ch. 76, par. 2(c) ), which now covers savings and loan associations is applicable. Both of the parties appear to regard the statute as being effective. Additionally, both parties in their briefs in this court discuss the law as though the law concerned was that of Illinois and no reference is made to any case or statute from Missouri.

As to the effect of execution of a similar joint savings account agreement in In *Re Schneider*, 6 Ill.2d 180, 127 N.E.2d 445, the Supreme Court points out:

"This Court has held that the relationship established by a joint bank account is not that of joint tenancy, but rather is one which is governed by the provisions of the agreement between the bank and the depositors."

■■ An extended discussion of the law relative to joint savings accounts is not necessary here since we have previously discussed it in *Kirkham v. Halford*, 83 Ill.App.2d 300, 227 N.E.2d 527 and *In Re Estate of Foster*, 104 Ill.App.2d 447, 244 N.E.2d 620. Under these rules there is no substantial question but that an instrument creating a joint account

presumably speaks the whole truth and in order to go behind the terms of the agreement the one claim adversely thereto has the burden of proving by clear and convincing evidence that a gift was not intended.

The conservator seeks to contradict this rule by arguing that she has the right to withdraw the proceeds of the deposit for the use and benefit of the ward, citing *Manta v. Kahl*, 348 Ill.App. 373, 108 N.E.2d 781. However, in a later case, *In Re Estate of Hirsh*, 27 Ill.App.2d 228, 169 N.E.2d 591, it was held that a conservator should not determine the rights of joint depositors themselves, but should submit the matter to the court who would decide whether the joint funds were necessary for the support and maintenance of the incompetent. This rule is conceded by the conservator. We agree with the *Hirsh* case and also *In Re Estate of Johnson*, 351 Ill.App. 111, 113 N.E.2d 590, (abstract opinion) where the conservator of the estate of an incompetent cashed savings bonds jointly owned by his ward and another without a court order, although the bonds were not needed to be redeemed for the support of the ward, and when, after the death of the ward, the money derived from the bonds could be traced into his hands as executor, the court granted the petition of the surviving owner and ordered the proceeds paid over to her.

■■ At this point it is sufficiently decisive of this case to say that since the money involved could not have been used for the support of the decedent during her lifetime the conservator was without authority, and had no legal right, to take the proceeds from the joint account. (*In Re Estate of Johnson, supra; Lewis v. Hill*, 387 Ill. 542, 56 N.E.2d 619.) Further, since no petition was filed by the conservator to permit the trial court to establish the need prior to the commencement of the citation, in accordance with In Re: *Hirsh, supra,* it becomes apparent that the plaintiff had no right to recovery under the citation.

■■ Under the decision we have reached, it is not necessary to determine what the rights between the conservator and respondent would be were the ward still living. From the evidence here there is no indication of any fiduciary or other relationship which prohibited the joint signatory to this joint account agreement from drawing out the proceeds. However, the principle which is involved here is that the conservator should not arbitrarily destroy valid joint account agreements between the ward and another which were established prior to the incompetency or wardship, thus empowering the conservator, in effect, to decide who should be the beneficiary of the ward's largesse, especially where, as here, the conservator is herself an alleged donee of a similar joint account. This citation proceeding clearly did not put in issue the relative rights between donors-beneficiaries of different joint accounts. In this particular circumstance, the allegations of the petition for the citation omitted any mention

of the joint right and alleged the wrongful possession of a passbook, when it was never shown that a passbook existed.

The judgment of the circuit court is reversed.

Judgment reversed.

MORAN, P. J., and CREBS, J., concur.