Henry MAESS, Appellant,

v.

W. Dalton GREENFIELD, Administrator
of the Estate of Carl Corte
Dummier, Appellee.

Court of Appeals of Kentucky.

Feb. 4, 1977.

Burke B. Terrell, Paducah, for appellant.

Donald S. Muir, Paducah, for appellee.

Before HAYES, LESTER and PARK, JJ.

PARK, Judge.

In this litigation, the plaintiff-appellant, Henry Maess, seeks to recover the proceeds of a certificate of deposit from the defendant-appellee who is administrator of the estate of Carl Corte Dummier. The case was tried by the court without a jury, the testimony being taken by deposition. After making findings of fact and conclusions of law, the circuit court entered judgment dismissing Maess's complaint. From that judgment, Maess appeals.

On April 30, 1971, Dummier purchased a certificate of deposit from the People's First National Bank and Trust Co. Certificate of deposit was issued in the name of "Carl C. Dummeier or Henry Masse [sic]." Dummier purchased the certificate of deposit from his own funds. Dummier was an elderly bachelor with no immediate family. His closest relative, a brother, had died some years before.

The record establishes that Maess was a long-time friend of Dummier. The two men had engaged in many recreational activities together. When Dummier constructed a residence on land inherited from his brother, Maess assisted him by performing much of the carpentry work.

Not long after purchasing the certificate of deposit in 1971, Dummier suffered a disabling stroke. As a result of the stroke, a committee was appointed who handled Dummier's business affairs up to the date of his death. On September 9, 1974, the committee redeemed the certificate of deposit. As interest had been permitted to accumulate on the certificate of deposit, the committee received the sum of $19,270.33 from the redemption. Dummier died approximately six weeks later on October 28, 1974.

At the time the certificate of deposit was redeemed, the committee had exhausted

nearly all of the personal estate owned by Dummier. Dummier's monthly income from social security and railroad retirement benefits was not sufficient to meet his monthly needs. The evidence supports the circuit court's finding that the committee believed in good faith that it was necessary to redeem the certificate of deposit in order to meet the anticipated needs of Dummier. However, subsequent events established that, in fact, it was not necessary for the committee to have redeemed the certificate of deposit. If the certificate of deposit had not been redeemed, the committee's account would never have been reduced below $244.56, and a subsequent deposit would have raised the committee's account balance to $1,103.26 on the date of Mr. Dummier's death.

Following Dummier's death on October 28, 1974, the committee paid to the administrator of Dummier's estate the sum of $20,-373.59, which included the proceeds of the certificate. The committee then filed a final settlement which was approved by the county court without objection by Maess. Notice of the final settlement of the committee was given by publication, and there is no evidence that Maess had actual notice of the settlement. The circuit court held that Maess was not entitled to trace the proceeds from the redemption of the certificate of deposit into the hands of the administrator.

Until the date of his stroke, Dummier retained exclusive possession of the certificate of deposit. Consequently, Dummier also retained the power to redeem the certificate of deposit. KRS 355.3–116.

In *Saylor v. Saylor*, Ky., 389 S.W.2d 904 (1965), the Court of Appeals was required to determine the ownership of a joint savings account. The account had been opened by the husband with funds owned exclusively by him. The pass book was made out to "Mr. or Mrs. Adrian M. Saylor." In holding that a tenancy by the entirety was created, rather than a tenancy in common, the Court of Appeals stated:

"It is our belief that the average person who has a bank account in the name of himself 'or' another expects the balance on hand at the death of one of them to become the absolute property of the other. We hold, therefore, that there is a rebuttable presumption of such intent." *Id.* at 906.

In the present case, the circuit court found, and the parties concede, there was no evidence relating to Dummier's intention at the time he purchased the certificate of deposit. Based upon the rule enunciated in the *Saylor* case, it must be presumed that Dummier intended the certificate of deposit, or any portion remaining, to become the absolute property of Maess if he survived the date Dummier's death.

Although there is no Kentucky case in point, the generally recognized rule does not permit a committee for an incompetent to exercise the same rights that the incompetent could have exercised with respect to a joint account prior to his incompetency. A typical case supporting the general rule is *Hendricks v. Grant County Bank*, Okl., 379 P.2d 693 (1963). In that case, a widow, Mattie Mae Hendricks, purchased a certificate of deposit in the name of herself or her son, David C. Hendricks. Mattie subsequently became incompetent, and her guardian attempted to redeem the certificate of deposit. In holding that the guardian had no right to redeem the certificate of deposit in the absence of evidence showing that the funds were necessary for the support and maintenance of Mattie, the Oklahoma Supreme Court stated:

"Any determination on the part of Mattie to cash or withdraw the funds represented by the certificate would have involved the exercise of personal discretion. In 44 C.J.S. Insane Persons § 49, P. 134, the rule is stated:

'The guardian * * * of a mental incompetent does not become his alter ego, and is not empowered by virtue of his office to act for the incompetent in matters involving the exercise of a personal discretion so as to change an act performed by the incompetent while mentally normal. * * *'

"In the case of *Howard v. Imes*, 265 Ala. 289, 90 So.2d 818, 62 A.L.R.2d 1086, there was presented the question of the right of a guardian to withdraw all the funds of a joint tenancy bank account. That court in view of the circumstances and the above quoted rule and citing supporting decisions, stated:

'In applying the rule it has been specifically held that the guardian of a non compos mentis cannot withdraw all the funds in a joint account except for the ward's necessities, since such complete withdrawal would be the exercise of a personal right of the ward. * * *'

"See also Annotation at 62 A.L.R.2d 1091." *Id.* at 697.

The cases upholding the general rule that the committee or guardian of an incompetent may withdraw from a joint account only such funds as are necessary for the needs of the incompetent are collected in an annotation, 62 A.L.R.2d 1091, at 1093–95.

The administrator of Dummier's estate relies upon the decision in *Manta v. Kahl*, 348 Ill.App. 373, 108 N.E.2d 781 (1952). In that case, the Illinois Appellate Court held that the conservator of an incompetent had the right to withdraw the entire amount of a joint account. However, it should be noted that this case involved a suit by the co-depositor against the bank that honored the withdrawal by the conservator. Moreover, it is doubtful that the *Manta* case continues to be good authority in Illinois. In *Rozycke v. Sroka*, 3 Ill.App.3d 741, 279 N.E.2d 155, 157–58 (1972) the Illinois Appellate Court stated:

"The conservator seeks to contradict this rule by arguing that she has the right to withdraw the proceeds of the deposit for the use and benefit of the ward, citing *Manta v. Kahl*, 348 Ill.App. 373, 108 N.E.2d 781. However, in a later case, *In Re Estate of Hirsh*, 27 Ill.App.2d 228, 169 N.E.2d 591, it was held that a conservator should not determine the rights of joint depositors themselves, but should submit the matter to the court who would decide whether the joint funds were necessary for the support and maintenance of the

incompetent. This rule is conceded by the conservator. We agree with the *Hirsh* case and also *In Re Estate of Johnson*, 351 Ill.App. 111, 113 N.E.2d 590, (abstract opinion) where the conservator of the estate of an incompetent cashed savings bonds jointly owned by his ward and another without a court order, although the bonds were not needed to be redeemed for the support of the ward, and when, after the death of the ward, the money derived from the bonds could be traced into his hands as executor, the court granted the petition of the surviving owner and ordered the proceeds paid over to her."

In the present case, it reasonably appeared to Dummier's committee that at least a portion of the certificate of deposit would be needed for Dummier's support. The question remains whether Maess is entitled to trace the proceeds of the certificate of deposit which were not needed for Dummier's support into the hands of the administrator of Dummier's estate.

An analogous situation is presented in the law of wills. Prior to incompetency, a person may make a valid will containing specific bequests or devises. Subsequent to his incompetency, that person's committee or other guardian may sell the property mentioned in the specific bequest or devise in order to provide for the needs of the incompetent. If the incompetent dies before the entire proceeds from the sale are expended for his benefit, the question is raised whether the specific legatee is entitled to claim the remaining proceeds of sale. Again, there are no Kentucky cases in point. Although there is some split of authorities, almost all of the recent decisions support the claim of the specific legatee on the theory that the committee of the incompetent testator had no power to defeat the terms of the will except to the extent that the funds were actually required for the support of the incompetent.

The leading case is *Wilmerton v. Wilmerton*, 176 F. 896 (7th Cir. 1910). In discussing the power of a conservator of an incompetent to adeem a legacy, the court stated:

"The conservation of an estate under the lunacy laws, both here and in England, is purely an administrative function. Is it contemplated that an administrator, at his will, change the testator's will? The testator, lunacy coming on, is so far at least as a disposing mind is concerned, civilly dead. Does the disposing mind, along with the ward's effects, go over to the conservator? Is the conservator anything more than a mere custodian and administrator of the ward's estate, with no power, either directly or by indirection, to change the ward's duly expressed purposes respecting the disposition of that estate until the ward recovers his reason, or the administration after death begins?

\*   \*   \*   \*   \*   \*

" \*   \*   \*   The question, in our judgment, is not whether, as a mere matter of accident, or of purpose outside of the testator's purpose, the thing set apart as the corpus of a special bequest has been changed in specie. The real question is whether, all things considered, the testator's testamentary disposition did, or did not, remain, with reference to the particular thing embodied in the specific bequest or its proceeds, the same as it was the last moment he was able to exercise a testamentary disposition. In that way, and in that way only, we think, can the right of the man to dispose of his property according to his own wishes, exempt from the interference, caprice or interest of others, be fully carried out. In that way only can his intention, as embodied in his will, be truly administered." *Id.* at 899–900.

In *Lewis v. Hill*, 387 Ill. 542, 56 N.E.2d 619 (1944), the conservator of an incompetent sold real estate which was the subject of a specific devise made by the ward prior to her incompetency. In holding that the devisee was entitled to the remaining proceeds from the sale of the real estate, the Illinois Supreme Court stated:

"The county court in this instance directed the sale by the conservator for the purpose of Mrs. Collins' support. The conversion of the real estate into personalty was for that particular purpose and for her benefit alone. The fund produced by the sale cannot, therefore, be regarded as personalty for the benefit of her residuary legatees. All of the real estate of Sarah E. Collins in the possession of her conservator constituted a trust fund to be used, if necessary, for her support and the payment of her debts; and if not so used, then upon her death to go to the persons to whom she had devised the same when able to exercise a testamentary disposition. Conceding that the conservator could properly have used this money for her support or in the payment of her debts and the costs of administering her estate, still the money being on hand and not having been so used or its use so required, it must be regarded as a substitute for the land from the sale of which it was derived, and any rights which, under the will, would attach to the real estate itself will also exist in the fund. The fact that the conservator, in anticipation of the necessities of his ward, had converted the real estate into cash does not have the effect of transferring this fund, which represents the realty, to the residuary legatees." 56 N.E.2d at 622.

For an extensive discussion of the cases supporting the majority rule that a committee or other guardian of an incompetent may not defeat a specific bequest or devise by selling the asset unless the proceeds of sale are actually expended for the incompetent, see *Forbes v. Burket*, Fla.App., 181 So.2d 682 (1966), and the Annotation, 51 A.L.R.2d 770 and Later Case Service.

Another analogous situation occurs when a guardian for an infant or a committee for an incompetent sells real estate of the ward and the proceeds of sale are not expended prior to the ward's death. The question presented is whether the proceeds pass as personalty, or as real estate. The leading case on this question is the decision of the Court of Appeals in *McCoy v. Ferguson*, 249 Ky. 334, 60 S.W.2d 931, 90 A.L.R. 891 (1933). In that case, Vernon Ferguson, Jr.,

a minor, was the owner of a tract of land which was sold in a condemnation proceeding for $15,000.00. The proceeds from the judicial sale were paid to Ferguson's guardian. Ferguson later married, but died while still a minor. A dispute arose between Ferguson's widow and his grandfather with respect to the character of the remaining proceeds from the sale of the land. The grandfather contended that the proceeds constituted real estate in which the widow would have only a dower interest. In upholding the contention of the grandfather, the Court of Appeals stated:

"A judicial sale of the land was a conversion of the real estate into personalty. The proceeds in the hands of the guardians, from the moment he received them until the death of the ward, were, and continued to be, personal property as between him and his ward, within the meaning of section 2015, Ky.St., et seq. At the death of the ward, only for the purpose of descent and distribution, the proceeds are regarded by the law as real estate.

\*   \*   \*   \*   \*   \*

"Subsection 6 of section 494 of the Civil Code of Practice provides that real estate owned by persons under disability, such as infancy, unsound mind, or an adult married woman, when sold under the provisions of chapter 14 of the Civil Code of Practice, when such owner shall die without issue, without having received the proceeds, the person who would have been entitled to the property, if it had not been sold, shall be entitled to the proceeds, or the property in which they have been invested. *Weisiger v. McDonald*, 116 Ky. 862, 76 S.W. 1080, 81 S.W. 687, 76 S.W. 507, 25 Ky.Law Rep. 1053, 26 Ky.Law Rep. 416; *Terrell v. Maupin*, 83 S.W. 591, 26 Ky.Law Rep. 1203. While the provisions of the section do not embrace sales of land of an infant who dies in infancy, without issue, when not made under the provisions of chapter 14, Civil Code of Practice, before the proceeds have been disposed of by his guardian in the exercise of the power and in the

discharge of the duties imposed upon him by section 2027, Ky.St., et seq., yet this Code provision manifests the policy of the law not to permit a judicial sale of an infant's land and a conversion thereby into personalty, to exempt the proceeds from the operation of the statutes of descent and distribution of the real estate of an infant. *Collins v. Champ's Heirs*, 15 B.Mon. 118, 61 Am.Dec. 179.

"In *McClain v. McClain*, 151 Ky. 356, 151 S.W. 926, Ann.Cas. 1915A, 155; Id., 152 Ky. 206, 153 S.W. 234, Ann.Cas. 1915A, 155, the real estate of a lunatic was sold by order of court for the purpose of paying his debts. It was held that the surplus proceeds remained realty and the widow was entitled only to dower therein, such surplus not having been disposed of by the husband during his life.

\*   \*   \*   \*   \*   \*

"In Pomeroy's Equity Jurisprudence, vol. 3 § 1167, the rule is thus stated: 'Where land is taken or purchased under compulsory powers conferred by statute and the owner is sui juris the conversion is effected; but if the owner is an infant or a lunatic or the land is in settlement, the purchase money remains land; there is no conversion. Where the land is sold by an order of court for any purpose it is a fixed principle upon which the court always proceeds that the character of the property shall be changed only so far as may be necessary to accomplish the particular purpose.' Story's Equity, vol. 2 § 1101.

"The rule rests upon the principle that during disability, neither a married woman, infant, nor lunatic can exercise the right of election to take their respective interest as money, and therefore the proceeds will be held in their unconverted character as realty until such election can be legally made. *McLean v. Leitch*, 152 N.C. 266, 67 S.E. 490. It may be safely said that it is a universal rule without exception that when real estate of an infant is converted into money by statute, or by order of court, and he dies without issue before attaining his majority, the

fund will be treated as real estate and as such will descend to the heirs at law of the infant. It is apparent that it is our conclusion that the $15,000 received by the guardian as the proceeds of the sale of land of Vernon Ferguson, Jr., during his infancy was personal property subject to the expense of his support and maintenance, and having died before attaining his majority, the residue descended as real estate and as such should be distributed according to the statutes applicable to the distribution of the proceeds of real estate." 60 S.W.2d at 932–33.

*Baker v. Thomas*, 272 Ky. 605, 114 S.W.2d 1113 (1938), presented a novel situation in which a committee attempted to affect the devolution of his incompetent ward's estate upon death. The incompetent had two illegitimate children as a result of an incestuous relationship. Recognizing that the incompetent had no right to make a will, his committee instituted an adoption proceeding so that the two children could inherit as legitimate heirs of the incompetent. The Court of Appeals held that a committee could exercise only the power of possession, care and management of the incompetent's estate. The committee had no power to initiate adoption proceedings on behalf of the incompetent so that his two illegitimate children could inherit as a legitimate heir.

As a general rule, a committee or guardian of an incompetent has no power to change the beneficiary in the incompetent ward's life insurance. An Annotation, 21 A.L.R.2d 1191 (1952), states the rule as follows:

"In the few cases revealed by an exhaustive search of the point under annotation, it is stated generally that a guardian of an incompetent has no power, without court authority, to change the beneficiary in an insurance policy on the life of his ward. The holdings seem to be based, and rightly so, on the theory that the right to change a beneficiary in an insurance policy is a right personal to the insured, and thus cannot be exercised by a guardian, unless a court decides that it is in the best interests of the ward."

There are a number of circumstances in which a personal right of an incompetent cannot be exercised by his committee. For example, a committee has no right to consent to a kidney transplant from his incompetent ward to the incompetent's twin brother. That decision could be made only by a court of equity under the doctrine of substituted judgment. *Strunk v. Strunk*, Ky., 445 S.W.2d 145, 35 A.L.R.3d 683 (1969). A committee has no right to make an election for an incompetent to take under or against a will. That right of election must be exercised by a court of equity. *Ramsey's Ex'r. v. Ramsey*, 243 Ky. 202, 47 S.W.2d 1059 (1932). Other Kentucky cases are collected in the Annotation, 21 A.L.R.3d 320, 336–37 (1968).

During his lifetime, Dummier had the personal right at any time for any reason to destroy the survivorship feature of the certificate of deposit. Dummier's committee did not possess any such broad powers with respect to the certificate of deposit. The committee could properly use so much of the certificate of deposit as was actually needed for the maintenance and support of Dummier. However, Dummier's committee did not have the right to terminate Maess's survivorship interest in so much of the certificate of deposit as was not required for Dummier's maintenance and support. There is no significance to the fact that the subject matter of this litigation is a certificate of deposit rather than a savings account which would have permitted periodic withdrawals. When redeemed, the certificate of deposit had almost $3,000 in accumulated interest, which the committee could have used before touching the principal of the certificate. There also was nothing to prevent the committee from renewing the certificate of deposit for a lesser amount and using the difference for Dummier's support and maintenance.

The opening of a joint savings account or the purchase of a joint certificate of deposit with a survivorship feature can be a simple form of estate planning. Dummier is presumed to have intended that Maess receive any portion of the certificate of deposit

remaining on Dummier's death. The committee could not have adeemed a specific bequest or devise. The committee could not have avoided the application of the statutes of descent and distribution merely by converting realty into personalty. The committee had no authority to change a beneficiary in a life insurance policy or have his incompetent ward adopt a person for purposes of inheritance. To the extent that the committee did not actually expend the proceeds from the redemption of the certificate of deposit for the support and maintenance of Dummier, the committee had no power or authority to exercise Dummier's personal right to terminate Maess's survivorship interest in the certificate of deposit.

When the committee redeemed the certificate of deposit, the committee held the proceeds in trust for the benefit of Dummier during his lifetime. In order to carry out Dummier's presumed intention, the committee will also be deemed to have held the proceeds of the certificate of deposit not required for Dummier's support upon the same terms and conditions as the original certificate of deposit. It follows that Maess is entitled to trace the proceeds of the certificate of deposit remaining on Dummier's death into the hands of the administrator of Dummier's estate who received the proceeds from the committee.

The administrator of Dummier's estate asserts that Maess's claim is barred by his failure to object to the committee's settlement. This argument is without merit. As the circuit court found, the committee did not act illegally in redeeming the certificate of deposit. Maess's claim was against Dummier's estate for the proceeds of the certificate of deposit which the committee was not required to expend for Dummier's benefit. Maess would have had no claim of any kind until the date of Dummier's death. Had Dummier lived long enough, his committee could have expended the entire proceeds from the redemption for his benefit. The committee's power and authority terminated on the date of Dummier's death.

The general rule with respect to the payment of claims by a committee after the date of an incompetent ward is well summarized in the following statement from the case of *Re Bohnstedt*, 36 Del.Ch. 97, 125 A.2d 580, 60 A.L.R.2d 959, 962 (1956):

"The text writers and almost but not all of the Courts which have considered our problem have concluded that after the death of the mentally ill person the trustee, absent statutory authority, has no power to pay existing obligations. The creditors must file their claims in the estate proceedings. See *In Re Estate of Colvin*, 3 Md.Ch. 278; *Norton v. Strong*, 1 Conn. 65 (published 1848); *Hyden v. Wilkinson*, 187 Okl. 348, 102 P.2d 877; Compare *In re Frew's Estate*, 340 Pa. 89, 16 A.2d 26; Woerner's American Law of Guardianship, § 150; 25 American Jur. Guardian and Ward, § 53; 39 C.J.S. Guardian and Ward § 41.

"While various reasons have been advanced for the conclusion that a trustee may not pay outstanding obligations once the mentally ill person has died, I believe the basic reason for the rule is that absent statutory power the trustee's power arises from and is dependent upon the existence of the mentally ill person. Once that person dies the statutory scheme applicable to decedents' estates comes into play."

It follows that Maess was not required to assert his claim against the committee following the date of Dummier's death, and Maess's claim is not barred by the committee's settlement.

This court does not express any opinion on the question whether the proceeds from the redemption of the certificate of deposit in the hands of the administrator of Dummier's estate are subject to any of the costs and expenses of administration, including this litigation. The question was never presented to the trial court. It was neither briefed no argued before this court. Under the circumstances, this issue can best be determined by the circuit court having in mind that the relief available to Maess is an equitable remedy.

The judgment of the circuit court is reversed, and the case is remanded for further proceedings consistent with the opinion.

All concur.